# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF CALIFORNIA
DEPARTMENT OF SOCIAL SERVICES,
             *Plaintiff-Appellee,*

v.

MIKE LEAVITT, Secretary of Health
and Human Services,
             *Defendant-Appellee,*

v.

ENEDINA ROSALES,
      *Plaintiff-Intervenor-Appellant,*

LARRY BUGGS; BRENDA BUGGS;
MARY ELLEN DEEGAN; GLORIA
JEFFERSON; SHAWN SPENCER,
             *Movants-Appellants.*

No. 06-56136

D.C. No.
CV-99-00355-FCD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
October 10, 2007—San Francisco, California

Filed April 25, 2008

Before: David R. Thompson, William A. Fletcher, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

4477

## COUNSEL

Elliot Silverman (argued), David M. Beckwith, and Catherine Shiang, of McDermott Will & Emery LLP, and Marjorie Shelvy (argued), Yolanda Arias, and Silvia Argueta, of the Legal Aid Foundation of Los Angeles, for plaintiff-intervenor-appellant Enedina Rosales and for the movants-appellants.

Paul Reynaga (argued), Supervising Deputy Attorney General of the State of California, Thomas R. Yanger, Senior Assistant Attorney General of the State of California, and Edmund G. Brown, Jr., Attorney General of the State of California, for plaintiff-appellee State of California Department of Social Services.

Jeffrey A. Clair (argued), Barbara C. Biddle, Attorneys, Civil Division of the United States Department of Justice, McGregor W. Scott, United States Attorney, and Peter D. Keisler, Assistant Attorney General, for defendant-appellee Mike Leavitt, Secretary of Health and Human Services.

## OPINION

BERZON, Circuit Judge:

In *State of California Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 856-57 (9th Cir. 2003) (referred to as "*Rosales*," after intervenor-appellant Enedina Rosales), we rejected a U.S. Department of Health and Human Services ("HHS") interpretation of the statute determining eligibility for the Aid to Families with Dependent Children-Foster Care ("AFDC-FC") program.[1] *See* 42 U.S.C. § 672. We remanded to the district court to implement what we held to be the

---

[1] A detailed discussion of the earlier history of this case can be found in *Rosales*, 321 F.3d at 838-45. We do not rehearse it here.

proper interpretation of the statute. The district court subsequently issued an injunction against HHS and the California Department of Social Services ("CDSS") enforcing the *Rosales* eligibility standard. We now consider whether HHS and CDSS are entitled to relief from judgment due to a statute enacted after *Rosales* and whether the district court failed to respond appropriately in the face of evidence that CDSS may not have complied with the injunction.

## I.   Background

On remand, the district court ordered CDSS to provide for the review of all foster care cases open on or after March 3, 2003, for benefits eligibility under *Rosales*'s construction of § 672.[2] CDSS was to pay benefits due "for the entire period, subsequent to December 23, 1997, in which the child was entitled to AFDC-FC payments under [*Rosales*] and was otherwise eligible for such benefits and those payments were not paid." New applications were, of course, to be considered under the statute as construed in *Rosales*. To begin the process, CDSS was ordered to issue an All County Letter to the county officials who implement its programs, directing them to review their cases "to determine eligibility in accordance with [*Rosales*] and consistent with [the district court's] judgment." The review was to be completed no later than April 17, 2005, with benefits paid within 30 days of an eligibility finding.[3]

---

[2]The district court filed its first relief order on remand on February 10, 2004. It twice amended the order. The second amended order, filed August 17, 2004, is the one relevant here.

[3]The August 2004 Order follows in its entirety:

1.   Judgment is hereby entered in favor of the Plaintiff and Plaintiff-Intervenor for the reasons stated in the opinion of the Ninth Circuit, dated March 3, 2003.

2.   DSS and the Secretary [of HHS] are hereby ordered to comply with [*Rosales*].

Whether CDSS complied with the district court's August 2004 Order is the question at the core of this case. It is clear

3. The Secretary shall approve the Title IV-E AFDC Foster Care (AFDC-FC) State Plan Amendment submitted by DSS as of December 23, 1997.

4. For all foster care cases in which dependency jurisdiction was open on or after March 3, 2003, DSS shall make AFDC-FC payments for the entire period, subsequent to December 23, 1997, in which the child was entitled to AFDC-FC payments under [*Rosales*] and was otherwise eligible for such benefits and those payments were not paid. For the purposes of retroactive payments made under this order, foster homes approved on or after March 3, 2003, shall be considered to have met the federal approval standards.

5. The Secretary shall reimburse DSS, and the State of California, at the federal participation rate, for all AFDC-FC benefits paid by DSS pursuant to the approved Title IV-E AFDC-FC State Plan Amendment.

6. DSS shall issue a directive to all County Welfare Departments and Chief Probation Officers and other appropriate parties ("All County Letter") to review all foster care cases open on or after March 3, 2003 to determine eligibility in accordance with [*Rosales*] and consistent with this judgment. Each such case shall be so reviewed during the next regular six-month review to which the case would be subjected in the normal course of business, but no later than eight months from the date of the issuance of this order. DSS shall pay all benefits which are found to be due as a result of those reviews within 30 days of the determination of eligibility.

7. Within 10 days of this order, DSS shall submit to the Secretary for approval a draft All County Letter, consistent with the terms of this order. Within 10 days of receiving the draft All County Letter, the Secretary shall [either approve the letter or file objections with the court].

8. Upon receiving approval of the All County Letter from the Secretary, DSS shall issue the All County Letter to all County Welfare Departments and Chief Probation Officers and other appropriate parties.

9. DSS shall immediately make AFDC-FC payments to [Enedina Rosales] for the entire period, subsequent to December 23, 1997, in which her grandson was in her care, was a dependent of the court, and AFDC-FC benefits were not paid.

(The entity which the district court refers to as DSS is the one which in this opinion we call CDSS.)

that CDSS did send an All County Letter in September 2004. But whether any review was conducted, or any benefits were paid, has not been documented.[4] The All County Letter itself ordered such steps, requiring that all cases "open on March 3, 2003 shall have the broader eligibility criteria applied retroactively," recommending that counties "immediately review *any case* identified as potentially eligible" (emphasis in original),[5] and providing two claim forms — one for administrative costs associated with implementing the district court's Order and one for the *Rosales* payments themselves. According to the All-County Letter and accompanying forms, counties were to record, among other details, the amount of the new federal AFDC-FC payments they were claiming as a result of the reviews, along with a "persons count" of parties receiving payments under county, state, and federal programs as a result of the reviews, and, if the county sought administrative costs, "the number of *Rosales* cases" that were shifted into AFDC-FC payment eligibility after the reviews. Even if a county had no costs to report, it was still to "complete and certify the form indicating zero expenditures." The forms were to be submitted "no later than April 30, 2005." The counties were ordered to "retain all supporting documentation for audit purposes."

On April 20, 2005, after the mandated review period ended, Rosales's counsel wrote to counsel for CDSS to request "a county-by-county list of the number of cases reviewed, the number of cases approved, the number of cases denied and the reason(s) for the denials," along with "assurance that

---

[4]The only benefits we know have been paid as a result of the August 2004 Order were those paid to Rosales herself for a period of foster care ending in July 2001, as specifically required by the ninth paragraph of the Order.

[5]In an earlier All County Letter, issued on December 31, 2003, shortly after *Rosales* was decided, CDSS opined that, under *Rosales*, "[m]ost children will be eligible for benefits with a needy or non-needy caretaker relative unless the child has significant income and resources or some other factor which would make him/her ineligible."

every county met the mandated deadline." CDSS's counsel replied on May 11, after the deadlines set by the Order and by the All County Letter had elapsed, that while "claims data" had been submitted, the information Rosales's counsel sought was "not ascertainable from the claims submitted by the counties," that CDSS had "no such data," and that no "such 'evidence' of compliance [was] required by the Court's order in *Rosales*."

Counsel for Rosales served a Request for Production of Documents on CDSS the following January, requesting, *inter alia*, "All Documents relating, regarding or referring to Your efforts to comply with [*Rosales*], including, but not limited to, all Communications regarding Your compliance efforts"; "All Documents relating, regarding or referring to all payments by You to all foster care cases in which dependency jurisdiction was open on or after March 3, 2003, based on the redetermination of eligibility in accordance with the [district court's order]"; "All Documents relating, regarding or referring to [the All County Letter]"; "any follow-up communications to anyone after issuance" of the Letter "regarding [its] subject matter"; and "All Documents relating, regarding or referring to the contentions set forth in [CDSS's counsel's May 2005 letter] that county-by-county data listing the number of cases reviewed, the number of cases approved, the number of cases denied, and the reasons for denial was not ascertainable from claims submitted by the counties."

CDSS refused to provide the requested information, in part because "the discovery requests ha[d] been propounded after entry of judgment," and "[i]n the absence of threshold determinations by the Court regarding the existence and scope of an issue that requires resolution and that discovery is necessary to resolution of any such issue, the discovery requests [were] premature, unauthorized, and unduly burdensome." Rosales did not move to compel discovery. *See* Fed. R. Civ. P. 37(a).

On February 8, 2006, Congress passed the Deficit Reduc-tion Act of 2005 ("DRA"), which, among other effects, amended § 672 to foreclose the statutory construction set forth by *Rosales*. Pub. L. No. 109-171, § 7404-05, 120 Stat. 4, 151-55 (2006). In March, CDSS issued an All County Let-ter directing that the "counties must immediately 'track' all *Rosales* cases, for which federal foster care benefits were paid starting on October 1, 2005, and thereafter until clarification" on the effects of the statute was received from the district court and HHS. Not long afterward, both HHS and CDSS moved under Rule 60(b) for relief from judgment based on the DRA. While the motions were pending, on June 9, 2006, HHS directed that the DRA's eligibility provision should be implemented on a rolling basis: As cases came up for annual eligibility reviews, children previously receiving benefits under *Rosales* but now ineligible under the DRA would have their benefits terminated.

Rosales cross-moved to enforce the judgment, joined in a separate motion by five other foster caregivers.[6] In Rosales's motion, she requested "[t]hat the Court authorize limited dis-covery for the purpose of ensuring complete and effective compliance with this Court's judgment." Along with the motion, she included CDSS's response, quoted above, declin-ing to provide the requested discovery. Also accompanying Rosales's motion was a declaration by her counsel, Marjorie Shelvy, stating that, after the judgment on remand, Shelvy had represented more than a dozen AFDC-FC claimants who had been denied benefits "in direct contravention [of] the *Rosales* decision." Rosales declared that she had not received pay-ments she believed she was entitled to for a recent period of foster care. The five other foster caregivers also supplied dec-larations that they had been denied benefits owed to them.

---

[6]The other caregivers brought their motion under Fed. R. Civ. P. 71, which provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."

The motions to enforce the judgment, relying upon Shelvy's declaration and upon the individual cases of the movants, argued that CDSS had not complied with the judgment. Rosales charged that CDSS had a "policy of ignoring [the district court's] judgment," and had "continued to apply the old, pre-*Rosales* legal standard" in at least the dozen cases referred to in Shelvy's declaration, as well as in her own case. The other caregivers similarly argued that CDSS "continues to ignore [the district court's] judgment compelling compliance with [*Rosales*]" and that "CDSS continues to deny proper review [of] open benefit cases and denies benefits to foster care families" entitled to benefits under the *Rosales* standard, including in their own cases. Rosales asked, at a minimum, that the court ensure that "all claims for past due benefits be reviewed consistent with [the court's] prior judgment . . . and past due benefits be promptly paid." In this regard, in their consolidated reply in support of their motions to enforce the judgment, Rosales and the other caregivers argued that "[l]imited discovery is necessary in order to learn what the CDSS and the Counties did to implement the Court's judgment, as well as what the State decided to forego in enforcing the judgment."

As one way of protecting claimants' rights and of gathering reliable compliance data, Rosales and the other caregivers also asked that the court require CDSS to provide Notices of Action ("NOAs"), which are formal statements of the agency's benefits decision, to all AFDC-FC program applicants who had been denied benefits before *Rosales* and who were again denied during the review. *See* CAL. DEP'T OF SOC. SERVS. MANUAL OF POLICIES AND PROCEDURES § 22-071 (describing notice requirements). Rosales also opposed granting relief from judgment with regard to parties receiving, or entitled to receive, benefits under *Rosales*, arguing that such relief would be an impermissibly retroactive application of the DRA.

The district court granted CDSS and HHS relief from judgment as of June 9, 2006, the date of HHS's directive concerning the implementation of the DRA, forward. The court largely denied the motions to enforce the judgment.[7] Looking for evidence of noncompliance in the denial of benefits to Rosales and the other caregivers, the district court held that in three of the cases "the materials submitted indicate that the child was not entitled to AFDC-FC benefits," and that in the remaining two cases the evidence was "insufficient to determine whether the parties are eligible for AFDC-FC benefits."[8] The court also opined that "if [CDSS] wrongly denied AFDC-FC benefits in two or potentially five individual cases, this showing is insufficient to demonstrate that [CDSS] has failed to comply." Not mentioning Shelvy's declaration indicating that CDSS had failed to apply *Rosales* in more than a dozen cases, the district court concluded that "neither Rosales nor [the other caregivers] have provided any evidence that [CDSS] has not complied with the court's order." The court refused to require NOAs, as they were not "explicitly require-[d]" by its Order. The court did not expressly discuss the request to authorize discovery, but also did not order discovery, thereby implicitly denying the request.

Rosales and the other caregivers timely appealed. They argue that (1) relief from judgment should not have been granted with regard to claimants who received, or were entitled to, benefits under *Rosales* before the passage of the DRA, because such relief would impermissibly apply the DRA

---

[7]The district court did grant the motions to enforce the judgment in one respect, not at issue here: In its March 2006 All County letter, CDSS directed its officers immediately to implement the DRA. The court held that CDSS should not have so directed without first seeking relief from the injunction and therefore set the June date, which was after the motions for relief from judgment were filed, as the trigger date for relief from judgment.

[8]Although there are six caregivers on the motions — Rosales and five others — two of the caregivers are a couple. As a result, there were only five foster care cases in the record before the district court.

retroactively; (2) the district court should require NOAs for parties who were ineligible pre-*Rosales* and who were still deemed ineligible after the court-ordered review; and (3) the court should at least require CDSS to "provide verification of its compliance with the *Rosales* decision, including (i) the number of cases reviewed, (ii) the number of cases denied pursuant to the review, and (iii) the number of cases approved pursuant to the review."

## II. Analysis

### A. Standard of Review

We review the grant or denial of Rule 60(b) motions for relief from judgment, as well as the grant or denial of motions to enforce injunctions, for abuse of discretion. *See United States v. Asarco, Inc.*, 430 F.3d 972, 978 (9th Cir. 2005) (Rule 60(b) motions are reviewed for abuse of discretion); *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc) (same for decisions concerning enforcing injunctions).

A denial of a request for discovery is also ordinarily reviewed for abuse of discretion. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Here, however, because the district court only implicitly denied the request to authorize discovery, it did not exercise its discretion. *See Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 n.3 (9th Cir. 1987). In the Rule 56(f) context, where "the district court did not exercise its discretion [concerning ordering discovery], the issue of whether or not it should have presents a legal question which is subject to *de novo* review." *Garrett*, 818 F.2d at 1518 n.3; *see also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178-79 (9th Cir. 2006).[9] The

---

[9]At times we appear to have passed directly on the merits of such discovery requests when affirming a district court's implicit denial. *See Margolis v. Ryan*, 140 F.3d 850, 853-54 (9th Cir. 1998) (considering the "merits of the motion"); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1482

district court's failure here to exercise its discretion by addressing the merits of the request to authorize discovery before considering whether to enforce its judgment presents an analytically identical question. We therefore review *de novo* whether the district court should have addressed the merits of the request.

## B.   Motions for Relief from Judgment

**[1]** Turning to the merits, we first address CDSS's and HHS's motions for relief from judgment. We cannot say that the district court abused its discretion by granting the relief requested — namely, allowing CDSS and HHS to use the eligibility standard mandated by the DRA for all cases going forward. The DRA removed the legal basis for the continuing application of the court's Order.[10] A "change in law" of this type "entitles petitioners to relief under Rule 60(b)(5)." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

Rosales and the other caregivers nonetheless argue that CDSS and HHS are implementing the DRA "retroactively" by applying it to existing AFDC-FC benefits cases. This pur-

---

(9th Cir. 1996) ("affirm[ing] the district court's implicit denial" of a discovery request because the appellant identified "no potential evidence that would support her claim"); *Qualls v. Blue Cross of California*, 22 F.3d 839, 844 (9th Cir. 1994) (determining that a motion was "properly denied"). So far as we are aware, however, there is no case addressing the merits of a discovery request and reversing a district court's failure to order discovery. We need not now decide when such a reversal would be appropriate.

[10]HHS disputes the standing of Rosales and the other caregivers to challenge the application of the DRA, as the district court held that none of them had proved that they were entitled to benefits in the future. We agree with the district court that Rosales and the other caregivers have standing as to this question. Several of them have not yet received final benefits decisions, and the application of the DRA may be dispositive in their cases.

ported "retroactive" application, they argue, is impermissible. We disagree.

**[2]** There is, in the first place, no per se rule barring retroactive application of statutes, although retroactive application is generally disfavored. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). More importantly, the DRA is not being applied "retroactively" in the sense contemplated by *Landgraf*. The statute does not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* AFDC-FC beneficiaries have no right to continued payments based on their past eligibility. Congress's power to define the scope of statutory entitlements going forward is plenary. *See Bowen v. Gilliard*, 483 U.S. 587, 598 (1987). The district court therefore did not abuse its discretion by allowing the agencies to implement the DRA as Congress intended.

## C. Motions to Enforce the Judgment

We next consider the motions to enforce the judgment, addressing both the NOA and discovery issues.

### 1. The NOAs

**[3]** We first conclude that the district court did not abuse its discretion by declining to require CDSS to provide NOAs to previously ineligible parties who remained ineligible after the court-ordered review. The August 2004 Order, issued after substantial opportunity for comment by the parties, did not require NOAs in such circumstances.[11] NOAs might well have

---

[11]We note that, under the state regulations governing NOAs, it is not clear whether denial of benefits to a previously ineligible party after court-ordered review would be considered a new benefits decision, requiring an NOA, or simply a continued denial, which apparently would not require an NOA. *See* CAL. DEP'T OF SOC. SERVS. MANUAL OF POLICIES AND PROCEDURES § 22-071 (notice requirements). We need not, however, resolve the question. As the judgment itself is silent on NOAs, any error in applying state law is not a violation of the judgment.

served a useful notice function, as Rosales and the other caregivers argue. But that potential utility does not convert the district court's refusal to import an NOA requirement into its judgment after the fact into an abuse of discretion.

## 2. The Request to Authorize Discovery

As part of her motion to enforce the judgment, Rosales requested permission to engage in limited discovery. The request was tailored to determining whether reviews had occurred as ordered and whether claimants eligible under *Rosales* were, in fact, paid retroactive benefits for the period before the DRA was given effect. Although the district court opined that there was not "any evidence" that CDSS was not in compliance, it did not directly address the question whether discovery should have been allowed, as requested, to develop admissible evidence regarding compliance. We conclude on *de novo* review that the district court should have addressed the merits of the request to authorize discovery before denying the bulk of the motions to enforce the judgment.

**[4]** In so determining, we begin from the recognition that "[t]here is no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Here, Rosales requested limited discovery to aid the court in determining whether CDSS had complied with a judgment in her favor. The request was one the district court could have granted, as part of its inherent power to enforce its judgments. *Cf. Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991) (referencing post-judgment discovery); *Wilkinson v. FBI*, 922 F.2d 555, 556-58 (9th Cir. 1991) (same), *abrogated on other grounds by Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Flores v. Arizona*, 480 F. Supp. 2d 1157, 1159-60 (D. Ariz. 2007). *See also, e.g., Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1408-09 (5th Cir. 1993) (discussing the inherent power to order discovery and various

exercises of that power); *cf.* Fed. R. Civ. P. 69(a)(2) (permitting discovery "[i]n aid of the judgment or execution" for money judgments).

**[5]** Indeed, a district court should give careful attention to a request for discovery to establish noncompliance with one of its judgments. *Hallett*, which is, as far as we can determine, the only case of this court to address a failure to allow discovery concerning noncompliance with a judgment, demonstrates as much. That case concerned a civil contempt motion for noncompliance with a prison reform consent decree, filed along with a motion to compel discovery. 296 F.3d at 739, 751. The district court held an evidentiary hearing on compliance, *id.* at 739, and further reviewed the materials subject to the discovery request in camera, determining them to be "minimally relevant," before denying the discovery motion, *id.* at 751. In that context, where evidence of compliance and noncompliance had been throughly aired and the remaining evidence was barely relevant, denying further discovery was not an abuse of discretion. *See also, e.g.*, *Fehlhaber v. Fehlhaber*, 664 F.2d 260, 263 (11th Cir. 1981) (finding no abuse of discretion in a Rule 69 case where the district court denied the request after conducting a "full adversary hearing" and entering an injunction providing relief to the movant). Here, however, there is no indication that the district court addressed the discovery issue at all, much less with similar care.

**[6]** Given the posture of this case, we decide only whether the district court should have exercised its discretion by addressing the merits of the request to authorize discovery. When answering the parallel question in the Rule 56(f) context, we bear in mind that "summary judgment should not be granted while [an] opposing party timely seeks discovery of potentially favorable information." *Clark*, 460 F.3d at 1178 (quotation marks and citation omitted). To decide whether a district court should have addressed such a request on the merits, we therefore ask only whether the discovery request

could have "provided potentially favorable information," *id.* at 1178 (internal quotation marks omitted), rendering summary judgment inappropriate. *See also Qualls v. Blue Cross of California*, 22 F.3d 839, 844 (9th Cir. 1994) (considering whether discovery would "have shed light on any of the issues upon which the summary judgment decision was based").

**[7]** We hold that a similar analysis applies in the context of a motion to enforce a judgment. When considering whether to permit discovery prior to resolution of such a motion, the kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance. If significant questions regarding noncompliance have been raised, appropriate discovery should be granted.[12] And, just as a 56(f) movant need only show that his or her discovery request could have "provided potentially favorable information," *Clark,* 460 F.3d at 1178 (internal quotation marks omitted), to warrant a remand on appeal for a merits consideration of the discovery request, so a movant who requested permission to engage in discovery as part of a motion to enforce a judgment need only show on appeal that the request might have generated information that could raise significant questions concerning compliance.

**[8]** Here, that standard is abundantly met. Information already present in the record raises questions of noncompliance, quite possibly sufficient to justify granting the request to authorize discovery. *See Garrett*, 818 F.2d at 1519 n.4 ("Without passing on the merits of plaintiff's discovery motion (a matter which should be addressed first by the district court), we note that the motion, on its face, does not

---

[12]*Compare H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1122 (6th Cir. 1976) (approving a district court's decision to deny a request for post-judgment discovery arising from a fraud on the court claim, and noting that "[t]o permit discovery after judgment in addition to the extensive discovery ordered during the trial . . . it was at least necessary for the [defendant requesting discovery] to present some proof to establish its . . . charges [of fraud].").

appear to be entirely without merit."). That information was certainly sufficient at least to require the district court directly to address the merits of the request. We set out the pertinent information here, both to demonstrate that the request to authorize discovery warranted careful consideration and to provide some guidance to the district court as it considers whether to permit limited discovery on remand:

**[9]** First, as noted, Rosales's counsel, an experienced AFDC-FC benefits attorney, reported that in at least twelve cases she had handled after the judgment on remand, officials were still using pre-*Rosales* eligibility requirements.

**[10]** Second, after the court-ordered eligibility review was supposed to have been completed, CDSS stated that it did not have the data Rosales's counsel had requested demonstrating that the review had occurred. But the All County Letter, required by the August 2004 Order, directed the filing of detailed claims forms with CDSS by April 30, 2005. Even counties bearing no costs were directed to "complete and certify the form indicating zero expenditures." So, if any payments were made pursuant to *Rosales*, at least *some* pertinent data — namely, the number of people receiving payments as a result of the reviews and the number of *Rosales* cases for which AFDC-FC administrative costs were sought after the reviews — should have been available from the forms. Also, additional information should have been retained by the counties and available to CDSS, as the counties were ordered in the All County Letter to "retain all supporting documentation for audit purposes." The record reflects that CDSS nonetheless maintained that the data was "not ascertainable from the claims submitted by the counties," that CDSS had "no such data," and that it had no obligation to collect evidence of compliance. The report of a complete information vacuum when *some* information should have been available or obtainable is itself indicative of possible noncompliance with the judgment.[13]

———————

[13]At the time of the district court's ruling, additional compliance information should have been available as a result of CDSS's March 2006 All

It is significant in this regard that CDSS, in both the district court and this court, insisted that it bore no direct responsibility under the judgment to make sure that eligible applicants are paid. Instead, CDSS has consistently maintained that it was required only to issue directives to the counties to review files and to make retroactive benefits payments to eligible applicants, and then to pay for whatever benefits the counties determined were due. In fact, the August 2004 Order imposes an obligation on CDSS itself to pay retroactive *Rosales* benefits to all eligible applicants. The Order provides that, "[f]or all foster care cases in which dependency jurisdiction was open on or after March 3, 2003, [CDSS] shall make AFDC-FC payments for the entire period subsequent to December 23, 1997, in which the child was entitled to AFDC-FC payments under [*Rosales*] and was otherwise eligible for such benefits and payments were not paid." As the Order did not make that independent obligation delegable, CDSS was obliged to comply with it, whether or not the counties carried out the responsibilities placed upon them by the All County Letter, and to develop or obtain the information needed to do so. That CDSS has such a fundamental misunderstanding of the Order is itself suggestive of noncompliance, and could thus provide an additional basis for further inquiry into what the agency did to comply with the judgment, other than sending out the All County Letter.[14]

**[11]** Third, the district court recognized that two of the five cases of the moving caregivers might have ended in a wrongful benefits denial, but, after finding the evidence submitted insufficient to determine whether they did or not, opined that "if [CDSS] wrongly denied" benefits in "two or potentially

---

County Letter. That Letter, as we have noted, ordered the counties to "immediately 'track' all *Rosales* cases, for which federal care benefits were paid starting on October 1, 2005, and thereafter."

[14]At oral argument, counsel for CDSS could not assure this Court that *any* benefits had been paid as a result of the court-ordered review.

five cases," it could still be in compliance with the court's Order. CDSS, however, was, as we have noted, ordered to pay retroactive benefits for "*all* foster care cases . . . open on or after March 3, 2003" (emphasis added) in which the child was eligible under *Rosales*. So, a failure to pay in "two or potentially five cases" *would* be indicative of noncompliance. Notably, the district court could not, and did not, conclude from the record that these two cases did not meet eligibility requirements.

Fourth, it is noteworthy that in refusing to respond to the request for production of documents that could have illuminated its compliance record, CDSS relied on the fact that the district court had not authorized post-judgment discovery. It should therefore have been clear to the court that Rosales and the other caregivers could not come forward with further evidence of noncompliance without an order authorizing discovery.

[12] In sum, Rosales appears to have a strong case for further discovery, although we need not now decide the merits of that question. *See Clark*, 460 F.3d at 1178. It is at least clear that, given the indications of noncompliance, and given that Rosales has made some specific discovery requests and thereby indicated the nature of the discovery sought, the district court should not have implicitly denied the request to authorize discovery without any merits consideration of the request.

[13] We therefore reverse the district court's denial of the motions to enforce judgment filed by Rosales and the other caregivers insofar as the court failed to address the request to authorize discovery, and remand for consideration of the request in light of this opinion.[15] We affirm the Order granting

_____

[15]On remand, the district court could appropriately decide to allow discovery directed towards determining what steps, if any, CDSS took to ascertain which children were "entitled to AFDC-FC payments under

relief from judgment prospectively from June 9, 2006, and the refusal to require that CDSS issue NOAs.

If the district court allows discovery and that discovery provides evidence of noncompliance, Rosales and the other caregivers may, of course, renew their motions to enforce the judgment as appropriate.

The parties shall bear their own costs.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

[*Rosales*]" and so should have been paid by CDSS under the terms of the judgment; whether all eligible applicants were in fact paid benefits pursuant to the judgment; and whether CDSS received the information from the counties required by the All County Letter and, if so, what that information conveys regarding the reviews conducted, the determinations made, and the benefits paid.