NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1215
_____

DEMOCRATIC NATIONAL COMMITTEE;
NEW JERSEY DEMOCRATIC STATE COMMITTEE;
VIRGINIA L. FEGGINS;
LYNETTE MONROE

v.

REPUBLICAN NATIONAL COMMITTEE;
NEW JERSEY REPUBLICAN STATE COMMITTEE;
ALEX HURTADO;
RONALD C. KAUFMAN;
JOHN KELLY

Democratic National Committee,

Appellant
_____

On Appeal from United States District Court
for the District of New Jersey
(D.N.J. No. 2-81-cv-03876)
District Judge: Hon. John M. Vazquez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 2, 2018

Before: SHWARTZ, ROTH, and FISHER, *Circuit Judges.*

(Filed: January 7, 2019)

———————
OPINION*
———————

FISHER, *Circuit Judge*.

The Democratic National Committee and Republican National Committee entered into a Consent Decree on November 1, 1982 to resolve a 1981 lawsuit. Less than two weeks prior to the 2016 presidential election, the DNC filed a motion to hold the RNC in contempt for an alleged violation of the Decree. After fifteen months of discovery, the District Court determined that the DNC had not shown a violation of the Consent Decree. The DNC appeals several discovery orders and the order declaring the Decree expired. We will affirm.

I.

*A. The Consent Decree*

Following the 1981 New Jersey gubernatorial election, the DNC sued the RNC and the New Jersey Republican State Committee (NJRSC) for intimidation of minority voters. The suit was resolved by a settlement that included the Consent Decree at the center of this case.[1] This Court has acknowledged that the prevention of intimidation and

———————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] App. 514 (Consent Order, *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 81-3876 (D.N.J. Nov. 1, 1982)).

2

suppression of minority voters is the "central purpose" of the Consent Decree and its later modifications.[2]

The Consent Decree prevents the RNC and NJRSC from engaging in "ballot security" programs, defined as "any program aimed at combatting voter fraud by preventing potential voters from registering to vote or casting a ballot."[3] It does not ban "normal poll watching functions."[4] The Decree was modified in 2009 to state that it would expire on December 1, 2017, unless the DNC proved a violation of the Decree. If the DNC proved a violation, the Decree would be extended eight years.

### B. The Trump Campaign and Alleged RNC Coordination

Less than two weeks before the 2016 presidential election, the DNC filed an emergency motion to hold the RNC in contempt, alleging that the RNC was violating the Decree by coordinating ballot security efforts with the campaign of then-candidate Donald Trump. The motion requested that the District Court issue a preliminary injunction to enjoin the RNC from participating in or encouraging ballot security activities.

---

[2] *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 203 (3d Cir. 2012), *cert. denied*, 568 U.S. 1138 (2013).

[3] App. 18 (D. Ct. Op.).

[4] App. 17-18.

The DNC alleged that the RNC actively supported voter suppression tactics endorsed by the Trump campaign.[5] Then-RNC Chair Reince Priebus made statements that the RNC was in "full coordination" with the Trump campaign in the weeks and months leading up to the election.[6] The DNC alleged that the RNC's coordination with the campaign included efforts to intimidate and suppress minority voters. In response, the RNC repeatedly asserted it did not engage in any poll watching activities, even activities that would be permitted by the Decree. The DNC concedes that RNC lawyers informed RNC staff that the RNC could not engage in ballot security activities.

The DNC made a discovery request the day after it filed its initial motion. The District Court issued two discovery orders in quick succession, ordering the RNC to produce agreements between it and the Trump campaign related to voter fraud, ballot security, and RNC poll-watching. Three days before the election, the District Court denied the DNC's requested preliminary injunction but permitted discovery to continue.

Discovery continued until January 2018, when the District Court determined that the DNC had not shown a violation of the Consent Decree by a preponderance of the

---

[5] At rallies, Trump made statements such as: "[G]o around and watch other polling places," App. 536; "[It's] so important that you watch other communities, because we don't want this election stolen from us," App. 538; and "You've got to get everybody to go out and watch . . . . And when I say 'watch,' you know what I'm talking about. Right?" App. 546. The Trump campaign website contained a form allowing supporters to register as "Trump Election Observers." App. 548.

[6] App. 599.

evidence. The court issued orders denying a final discovery request and declaring the Consent Decree expired. The DNC appeals.

## II.

The District Court had federal question jurisdiction over the original suit.[7] It retained jurisdiction to review and enforce the Consent Decree.[8] This Court has appellate jurisdiction over an appeal from the Consent Decree by its terms.[9] "We review a district court's discovery orders for abuse of discretion, and will not disturb such an order absent a showing of actual and substantial prejudice."[10] We review a district court's decisions on whether to modify or vacate a consent decree for abuse of discretion.[11]

---

[7] 28 U.S.C. § 1331.

[8] *Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced.").

[9] The Decree contained an explicit reservation of appellate jurisdiction over the enforcement of the settlement terms, pursuant to 28 U.S.C. § 1291. *See Keefe v. Prudential Prop. & Cas. Co.*, 203 F.3d 218, 223 (3d Cir. 2000); *see also Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 317 (3d Cir. 1990) (holding that courts have jurisdiction to enforce settlement agreements incorporated into orders).

[10] *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010).

[11] *Democratic Nat'l Comm.*, 673 F.3d at 201 (citing *Del. Valley Citizens' Counsel for Clean Air v. Pennsylvania*, 755 F.2d 38, 41 (3d Cir. 1985)).

## III.

The DNC argues that the District Court abused its discretion in entering eight orders limiting discovery[12] and one order declaring the Decree expired.[13] However, looking at the scope of discovery in its totality and at the individual orders that the DNC challenges, it is clear that the court acted within its broad discretion.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the general scope for discovery. However, that scope is prefaced by language giving district courts discretion to limit discovery: "Unless otherwise limited by court order, the scope of discovery is . . . ."[14] The court may limit discovery to ensure its scope is proportional to the needs of a case, and the court considers, among other factors, "whether the burden or expense of the proposed discovery outweighs its likely benefit."[15] Whether a court reasonably limited the scope of discovery is necessarily a fact-based inquiry.

Because district courts have their eyes and ears on a case from start to finish, they are in the best position to "reach[] a case-specific determination of the appropriate scope of discovery."[16] For that reason, we choose not to second-guess discovery orders except

---

[12] The DNC challenges discovery orders dated October 31, 2016 (Dkt. No. 113); November 2, 2016 (Dkt. No. 118); November 5, 2016 (Dkt. Nos. 139); January 4, 2017 (Dkt. No. 146); July 7, 2017 (Dkt. No. 167); September 29, 2017 (Dkt. No. 182); November 29, 2017 (Dkt. No. 197); and January 8, 2018 (Dkt. No. 212).

[13] Order dated January 8, 2018 (Dkt. No. 213).

[14] Fed. R. Civ. P. 26(b)(1).

[15] *Id.*

[16] Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

where the court has abused its discretion.[17] "To demonstrate that a district court abused its discretion, an appellant must show that the court's decision was 'arbitrary, fanciful, or clearly unreasonable.'"[18]

The District Court reasonably limited the scope of the DNC's individual discovery requests. The DNC isolates instances where discovery was denied as evidence of an abuse of discretion. For example, it highlights the court's refusal of its request to depose Reince Preibus. But in denying that request, the court concluded that Preibus's statements about knowing the Trump campaign's position on voter fraud did not suggest any discussions of ballot security efforts. After the court allowed the DNC to depose then-RNC Communications Director Sean Spicer, the DNC requested to depose Mike Roman, the alleged "front man for the Trump Campaign's efforts against voter fraud."[19] In denying that request, the court determined that there was no evidence from Spicer's deposition or at any point on the record that the RNC was working with Roman.

---

[17] The DNC relies upon an inapposite case from the Ninth Circuit to try to soften the standard. Appellant's Br. 29-31 (citing *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008)). The *Leavitt* court exercised *de novo* review rather than reviewing for an abuse of discretion because "the district court only implicitly denied the request to authorize discovery" and therefore failed to exercise its discretion at all. *Leavitt*, 523 F.3d at 1031-32. This case involves thorough, explicit rulings on discovery disputes by the District Court, so *Leavitt*'s reasoning is not applicable.

[18] *Democratic Nat'l Comm.*, 673 F.3d at 201 (quoting *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 542 (3d Cir. 2007)).

[19] App. 479.

The DNC also points to its denied request to depose Pennsylvania State Republican Party officials Tommy Knepper and Rob Gleason. However, the court correctly noted that the emails in support of the request regarding Tommy Knepper were related to voter turnout rather than ballot security activities, and Rob Gleason submitted a declaration that he was acting in his capacity as Chair of the Pennsylvania State Republican Party, not as a member of the RNC.[20]

The DNC additionally asserts that the District Court erred in not allowing them to depose Nevada poll watchers and a representative from Stampede. The District Court had good reason for not permitting the depositions. The District Court was provided with a declaration that stated that the RNC had no poll-watching operation in Nevada, and discovery revealed that Stampede was performing permissible, non-ballot security work in Florida and no services for the RNC in Nevada. The District Court also had evaluated information presented to it concerning the DNC's need for a document demand for communications between the RNC and JTD Strategies and determined the information was insufficient to require production of the information the demand sought. The DNC

---

[20] The District Court stated that to hold Rob Gleason accountable to the Decree would require the conclusion that all fifty state party chairs are subject to the Decree. App. 38-39. The court noted that there is no support for that broad a reading in the Decree or opinions interpreting it; rather, Judge Debevoise, the presiding judge for previous Decree disputes, expressly rejected that interpretation. Accordingly, Gleason's alleged actions were and are irrelevant and thus did not warrant a deposition.

8

did not raise a single challenge that was not carefully and appropriately considered by the District Court.

The District Court's handling of discovery on the whole suggests anything but "arbitrary, fanciful, or clearly unreasonable" decision making. In total, the court reviewed more than thirty filings in fifteen months. It heard on-the-record argument in nine separate instances, issuing nine written orders in response. The court afforded the parties the opportunity to be heard, thoughtfully considered their arguments, and provided detailed explanations of its decisions. Those decisions were couched within the burden versus benefit framework of Rule 26(b)(1). Further, the court required the RNC to review tens of thousands of pages of its own records, which resulted in the production of thousands of pages to the DNC. The court neither abused its discretion in its handling of discovery as a whole, nor abused its discretion with regard to any individual discovery request.

The DNC fails to support its challenge of the District Court's order declaring the Decree expired by its terms with any argument that the court abused its discretion. The DNC hangs its hat on its challenges to the discovery orders, arguing that if we find that the court abused its discretion on discovery, then we should also find that the Decree could not be ordered expired. However, because the District Court did not abuse its discretion on discovery, it follows that it did not abuse its discretion in ruling that the Decree had expired.

While it is possible that another court would have allowed further discovery or managed the case differently, we review only for abuse of discretion. The District Court did not abuse its discretion, and we will not upset its thoughtful adjudication of the matter.

IV.

For the reasons set forth above, we will affirm.