**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-15-1429-FCTa |
| CAREY A. ROESSLER-LOBERT, | Bk. No.   9:15-bk-11174-PC |
| Debtor. | Adv. Pro. 9:15-ap-01065-PC |
| MARY LEE, in her capacity as Personal Representative of the Estate of Juliana March, | |
| Appellant, | |
| v. | **OPINION** |
| CAREY A. ROESSLER-LOBERT; JERRY NAMBA, | |
| Appellees.[*] | |

Argued and Submitted on February 23, 2017
at Pasadena, California

Filed – May 15, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Bankruptcy Judge, Presiding

Appearances:     Seymour I. Amster argued on behalf of Appellant Mary Lee.

Before:  FARIS, CLEMENT,[**] and TAYLOR, Bankruptcy Judges.

---

[*]    Appellees did not file an answering brief or otherwise make an appearance in this appeal.

[**]    The Honorable Fredrick E. Clement, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Appellant Mary Lee, in her capacity as personal representative of the Estate of Juliana March, appeals from the bankruptcy court's order dismissing her adversary complaint against chapter 7[1] debtor Carey A. Roessler-Lobert. Although the bankruptcy court was understandably frustrated with Ms. Lee's attorney's misrepresentations and noncompliance with the applicable court order and rules, it abused its discretion in dismissing the complaint at the initial status and scheduling conference. Accordingly, we REVERSE the dismissal order and REMAND this case to the bankruptcy court.

## FACTUAL BACKGROUND

On June 2, 2015, Ms. Roessler-Lobert, proceeding pro se, filed a chapter 7 petition in the United States Bankruptcy Court for the Central District of California. On September 3, Ms. Lee, though her attorney, Seymour I. Amster, timely filed an adversary complaint to determine dischargeability.[2]

That same day, the bankruptcy court promptly issued the summons required by Rule 7004 via CM/ECF. The summons set a status and scheduling conference for November 5, 2015 and

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] The complaint, the substance of which is not directly relevant to this appeal, asserted a single claim for relief that alleged that the debtor fraudulently transferred about $78,000 from a bank account belonging to Ms. Lee's deceased daughter.

required Ms. Roessler-Lobert to respond to the adversary complaint by October 5, 2015.

The court simultaneously issued a scheduling conference order regarding the Civil Rule 26(f) meeting, initial disclosures, and Civil Rule 16(b) status conference. The scheduling conference order directed the plaintiff to serve a copy of the scheduling conference order with the summons. It also directed the parties to meet and confer at least twenty-one days prior to the November 5 status conference; discuss the nature of their claims and defenses, arrange for initial disclosures, discuss discovery issues, and propose a discovery plan; make initial disclosures; consider alternative dispute resolution; and file a joint status report no later than seven days before the status conference. According to the notice of electronic filing, the bankruptcy court e-mailed CM/ECF notification of the scheduling conference order to Mr. Amster's e-mail address on record with the court and mailed a hard copy to his address in Granada Hills, California, which was listed on the complaint.

Mr. Amster failed to timely serve Ms. Roessler-Lobert with the summons and scheduling conference order. At some point, he logged into his CM/ECF account and retrieved the summons and scheduling conference order. He attempted service on Ms. Roessler-Lobert on October 17, and she received the documents on October 20 – fifteen days after her deadline to respond to the complaint and only sixteen days before the status conference. Mr. Amster did not file a proof of service of the summons with the court.

On November 1, four days before the status conference, Mr. Amster called Ms. Roessler-Lobert and asked her to agree that they had met and conferred ahead of the status conference. According to Ms. Roessler-Lobert, the call lasted about eight minutes and "he said that he was just going to go ahead and file a unilateral statement. . . . [B]asically it was just about as far as whether or not to meet and confer and just say that I have." At approximately 8:15 pm the night before the conference, Mr. Amster filed a unilateral status report on behalf of Ms. Lee.

Mr. Amster did not appear at the November 5 status conference; instead, attorney Laura Dewey made a special appearance in his place. Ms. Dewey represented to the court that Mr. Amster was involved in a death penalty trial. She stated that Ms. Roessler-Lobert had not answered the complaint and requested that the court continue the status conference.

Ms. Roessler-Lobert explained to the court that she had only received the summons on October 20 and that Mr. Amster had called her four days prior and asked her to agree that they had met and conferred. The court noted that, in addition to the tardy service of the summons and the late meet-and-confer, Ms. Lee had not filed a status report[3] or a proof of service of the summons. In response, Ms. Dewey said that Mr. Amster has "been stuck in this very long-standing death penalty case and has simply fallen behind in his administrative work in his practice."

The court dismissed the case for want of prosecution, failure to file a status report that Local Bankruptcy Rule

---

[3] Because Mr. Amster had filed the unilateral status report at 8:15 pm the previous night, the court had not seen or reviewed the status report before the status conference the next morning.

4

("LBR") 7016-1 requires, and violation of the scheduling conference order. It entered an order ("Dismissal Order") dismissing the adversary proceeding the same day.

Ms. Lee filed a timely motion to set aside or reconsider the Dismissal Order ("Motion for Reconsideration"). Mr. Amster, on behalf of Ms. Lee, argued that he did not receive a copy of the summons or scheduling conference order because the court mistakenly sent the hard copy to an old address. (This was a false statement.) He logged into CM/ECF at an unspecified date and found the summons, then served the summons, complaint, and scheduling conference order on Ms. Roessler-Lobert on October 17.

He said that he called Ms. Roessler-Lobert on November 1 to obtain her support in creating a joint status report. He said that she did not understand what she was supposed to do, so he told her that he would file a unilateral status report.

Mr. Amster explained that he was unable to personally attend the November 5 status conference because he was involved in the so-called "Grim Sleeper" death penalty case and "was devoting a significant amount of his time to that matter which caused the delays in this matter."

Mr. Amster again did not show up for the hearing on the Motion for Reconsideration. Rather, attorney William C. Beall appeared on behalf of Ms. Lee. Mr. Beall argued that the court should reconsider the Dismissal Order based on Mr. Amster's neglect. He represented that "the hard copy summons [went] to the wrong address, so [Mr. Amster] didn't see it, and then he eventually did go into ECF and got it." He repeatedly reminded the court that Mr. Amster was "involved in a multiple murder

5

death penalty case down south. He got himself in too deep in this case. He wasn't able to give it the attention that it deserved, and so now, however, he is."[4]

The court was unsympathetic. It said that the court routinely issues the summons and scheduling conference order in every adversary proceeding. The scheduling conference order requires the plaintiff to contact the defendant and arrange a Civil Rule 26(f) meeting no later than twenty-one days prior to the status conference. It also stated that the local bankruptcy rules require the plaintiff to file a status report fourteen days[5] prior to the status conference and to appear at the status conference.

The court rejected Mr. Amster's excuse for not timely serving the summons. It said that the court had e-mailed notice of the issuance of the summons to Mr. Amster's e-mail address of record on September 3, and nothing "indicates that he even bothered to check his e-mail for the summons that he asked for from the Court." The court also rejected Mr. Amster's attempt to blame the court for mailing the documents to an incorrect address: "He claims in his defense in his motion for

[4] Ms. Lee also argued that, under Rule 7004, the court should have reissued the summons. Mr. Beall contended at the hearing that Ms. Lee had 120 days to serve the summons on Ms. Roessler-Lobert: "the Court did not have discretion to dismiss this case based on failure of service until that 120 days has passed." Ms. Lee's counsel briefly mentioned this argument at the oral argument but omitted it from her briefs. Therefore, Ms. Lee did not preserve this argument on appeal.

[5] The court said that, although the local bankruptcy rule requires parties to file the status report fourteen days before the status conference, the court allows parties to file the report seven days prior to the status conference.

6

reconsideration - that the Court sent the summons by regular mail to an incorrect address. That's not what happened. The Court didn't send a summons to an incorrect address. The Court sent the summons to him electronically with an ECF notice, just like the Court's supposed to, the day the summons was issued." The court noted that Mr. Amster had neglected to pay attention to this case and inquire after the summons for over a month.

The court also discussed Mr. Amster's failure to comply with Civil Rule 26(f). It said that he only contacted Ms. Roessler-Lobert a few days before the status conference; he did not file a status report until the night before the status conference; and he tried to convince Ms. Roessler-Lobert to agree that the short telephone call satisfied the meet-and-confer requirement. The court stated that "[t]hat's not what the order envisioned."

Ultimately, the court denied the Motion for Reconsideration. It clarified that the basis for dismissal was not merely the failure to serve the summons timely, but also the failure to comply with LBR 7016-1, Civil Rule 26, and the scheduling conference order. The court stated that, contrary to Mr. Amster's representations, the summons and scheduling conference order were sent to Mr. Amster's e-mail address of record,[6] and the scheduling conference order was also mailed to the Granada Hills address on record. The court concluded:

---

[6] Mr. Amster admits on appeal that he had not updated his contact information with the court. He says that "[h]e was not aware that the summons had been sent electronically to an old e-mail address he had. . . . Of course upon realizing this he updated all of his accounts with correct addresses so this problem would never happen again."

7

Counsel failed to check his e-mail for notice that the summons had been issued; failed to timely serve the summons, order, and complaint on the defendant; failed to file a proof of service of the summons with the Court; failed to initiate the Rule 26(f) conference, as ordered by the Court; and failed to timely file a status report. These omissions involve a complete lack of diligence in following the rules of this Court, which are unambiguous.

The court issued its order ("Reconsideration Order") denying the Motion for Reconsideration. Ms. Lee timely appealed from the Dismissal Order and the Reconsideration Order.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in dismissing Ms. Lee's adversary complaint.

## STANDARD OF REVIEW

We review for abuse of discretion the bankruptcy court's dismissal of a complaint for failure to comply with the rules or court order. See Schmidt v. Herrmann, 614 F.2d 1221, 1224 (9th Cir. 1980). Similarly, the bankruptcy court's dismissal of an adversary proceeding based upon a plaintiff's failure to prosecute is reviewed for an abuse of discretion. See Al-Torki v. Kaempen, 78 F.3d 1381, 1384 (9th Cir. 1996); Moneymaker v. CoBen (In re Eisen), 31 F.3d 1447, 1451 (9th Cir. 1994).

We also review for abuse of discretion the bankruptcy court's denial of a motion for reconsideration. See First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).

8

We apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. Id. Then, we review the bankruptcy court's factual findings for clear error. Id. at 1262. We must affirm the bankruptcy court's factual findings unless we conclude that they are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id.

"[W]e will overturn a dismissal sanction only if we have a definite and firm conviction that it was clearly outside the acceptable range of sanctions." Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (citation omitted).

**DISCUSSION**

**A. The bankruptcy court abused its discretion in dismissing the adversary complaint at the initial status and scheduling conference.**

Ms. Lee argues that the court abused its discretion in dismissing her adversary complaint. Although we disapprove of Mr. Amster's conduct and do not condone his misrepresentations or his negligence, we agree that the dismissal was an unduly harsh sanction.

The bankruptcy court identified three legal bases for the dismissal: Mr. Amster's failure to prosecute the adversary proceeding; his violation of the scheduling conference order; and his violation of the applicable local rule.

Neither the Ninth Circuit nor this Panel has ever articulated a single, unified standard for the imposition of

9

terminating sanctions. Rather, the Ninth Circuit and this Panel have stated slightly different standards, depending on the authority on which the sanction is based.[7] Therefore, we must separately analyze each of the three legal bases which the bankruptcy court employed.

### 1. Failure to prosecute

Civil Rule 41(b), made applicable in bankruptcy pursuant to Rule 7041, provides that, "[i]f the plaintiff fails to prosecute . . . , a defendant may move to dismiss the action or any claim against it." Civil Rule 41(b). Although the rule only authorizes a party to file a motion to dismiss, it is well settled that the court has "the inherent power sua sponte to dismiss a case for lack of prosecution." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986).

The Ninth Circuit stated the applicable standard in Henderson. The court began by emphasizing that "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances," and that "[a] dismissal for lack of prosecution must be supported by a showing of unreasonable delay." Id. The court held that, in determining whether to dismiss a case for lack of prosecution, the trial court must weigh several factors:

---

[7] It is not clear why the standard should vary depending on the asserted legal basis for the sanction. In many cases (such as this one), the same conduct can invoke multiple bases for the imposition of sanctions; for example, Mr. Amster's failure to file a timely unilateral status report violated a local rule and a court order and also arguably constituted a failure to prosecute. It is hard to see why the permissibility of a terminating sanction should depend entirely on which sanctioning authority the court chooses to employ. Further, as we will discuss in the text, the differences between the standards are smaller than they appear to be at first glance.

10

"(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits[;] and (5) the availability of less drastic sanctions." Id. No showing of bad faith "is required under the court's inherent power to dismiss for lack of prosecution under Fed. R. Civ. P. 41(b)." Id. at 1425.[8] Ideally, the bankruptcy court should make explicit findings concerning these factors, but such findings are not required.[9] In the absence of such findings, the appellate court must review the record independently to determine whether the dismissal was an abuse of discretion. Id. at 1424.

---

[8] The violator's mental state is relevant, however. As we shall see, the court must consider any excuse for the violation when determining whether delay was unreasonable and when evaluating the prejudice to the defendant. Further, in most of the cases where the Ninth Circuit upheld a dismissal for failure to prosecute, the court noted that the failure was "willful," Anderson v. Air West, Inc., 542 F.2d 522, 525 (9th Cir. 1976); see also Malone, 833 F.2d at 130 (dismissal for failure to comply with a court order was appropriate due to "the flagrant disobedience by plaintiff's counsel, her bad faith and her repeated failure to comply in any respect with the Court's pretrial order"), or the violations were so egregious that they could not have been the product of simple negligence, In re Eisen, 31 F.3d at 1454 (four year delay in prosecution without adequate excuse); Henderson, 779 F.2d at 1423 (failure to submit pretrial order despite four extensions and warnings).

[9] At the initial status and scheduling conference, the bankruptcy court did not make any explicit findings, other than to state that Ms. Lee did not timely serve the summons, file a status report, or file a proof of service of the summons. At the subsequent hearing on the Motion for Reconsideration, the bankruptcy court focused primarily on Mr. Amster's claim of excusable neglect; but the relevant analysis requires more than just an examination of how far a dilatory party's actions fell below an acceptable standard of conduct.

11

The first factor, the public interest in the prompt resolution of litigation, ordinarily weighs in favor of dismissal. See Yourish v. Cal. Amplifier, 191 F.3d 983, 990 (9th Cir. 1999). But not any delay will justify dismissal; rather, the deficient conduct must result in **unreasonable** delay. Henderson, 779 F.2d at 1423; In re Eisen, 31 F.3d at 1451. "A reviewing court will give deference to the district court to decide what is unreasonable 'because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable.'" In re Eisen, 31 F.3d at 1451 (quoting Henderson, 779 F.2d at 1423); see Henderson, 779 F.2d at 1424 (stating that even a "seemingly short delay" with a pattern of dilatory actions could warrant dismissal).

In this case, Mr. Amster's conduct was undoubtedly dilatory, but it only created a relatively short delay; a continuance of about a month would have given Mr. Amster enough time to correct his errors and get the case back on track.[10] Instead, the bankruptcy court dismissed the adversary proceeding at virtually the first opportunity (the initial status and scheduling conference). The first factor is neutral.

The second factor is the court's docket-management needs.

---

[10] Mr. Amster argues that the bankruptcy court should have granted a continuance, but the reason he offers is specious. Mr. Amster argues on appeal that, because the court did not set "this matter for a further hearing[,] appellant['s attorney] missed the opportunity to apologize to the judge and let him know it was not his intention to get him upset, purposefully ignore the rules, or be frivolous in handling this matter." He ignores the fact that he could have apologized to the court at the initial scheduling conference or at the hearing on the Motion for Reconsideration, had he bothered to attend either.

12

We defer to the trial court's decision on this issue because trial-level "judges are best situated to decide when delay in a particular case interferes with docket management and the public interest." Yourish, 191 F.3d at 990 (quoting Ash v. Cvetkov, 739 F.2d 493, 496 (9th Cir. 1984)). In the present case, Mr. Amster failed to serve Ms. Roessler-Lobert with the complaint, summons, and scheduling conference order in a timely fashion, and he filed his unilateral status report so late that the court could not review it before the status conference. As a result, the status conference was unproductive and a waste of the court's time and resources. Accordingly, the second factor favors dismissal, but not strongly, because a relatively short continuance could have solved the problem.

The third factor, the risk of prejudice to the defendant, requires that "we examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." In re Eisen, 31 F.3d at 1453 (quoting Malone, 833 F.2d at 131). The court must consider not just the prejudice to the defendant, but also the reasonableness of any excuse for the delay:

> In summary, where a plaintiff has come forth with an excuse for his delay that is **anything but frivolous**, the burden of production shifts to the defendant to show at least some actual prejudice. If he does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse. At that point, the court must exercise its discretion by weighing the relevant factors - time, excuse, and prejudice.

Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1281 (9th Cir. 1980) (emphasis added).

13

In this case, Mr. Amster attempted to excuse his conduct by pointing out that the death penalty case consumed his time. We recognize that even the most conscientious attorneys sometimes struggle to manage a heavy caseload. But an attorney has an obligation to handle each individual case with reasonable diligence; if the pressure of the death penalty case prevented Mr. Amster from competently representing Ms. Lee, he should not have undertaken her representation or should have referred her to substitute counsel. But we cannot say that an excuse based on a demonstrated and serious workload problem is frivolous. Thus, the burden shifted to Ms. Roessler-Lobert to show actual prejudice.

The bankruptcy court was properly concerned that the late service impaired Ms. Roessler-Lobert's ability to answer the complaint and meaningfully participate in the status conference. However, we cannot say that Ms. Roessler-Lobert's rights were irrevocably harmed. The court could have reset the applicable deadlines to allow Ms. Roessler-Lobert to file her answer and allow the parties to conduct a proper Civil Rule 26(f) meeting.

As the bankruptcy court noted, Mr. Amster's inattention forced Ms. Roessler-Lobert to appear at two hearings. However, we have stated that the fact that "a defendant is impacted by the mere existence of pending litigation against them is not prejudice as contemplated by this factor." Taylor v. Singh (In re Singh), BAP No. CC-15-1126-TaFC, 2016 WL 770195, at *9 (9th Cir. BAP Feb. 26, 2016). Ms. Roessler-Lobert's attendance at two brief hearings was not so prejudicial or burdensome so as to warrant a terminating sanction. Moreover, aside from appearing

14

at the two hearings, Ms. Roessler-Lobert did not make any serious effort to comply with the scheduling conference order or applicable rules; although she is unrepresented, she is not completely blameless.[11]  Further, nothing in the record indicates that Ms. Roessler-Lobert will be prejudiced due to the loss of evidence or the loss of memory by a witness.  Nealey, 662 F.2d at 1281.

Accordingly, the third factor weighs against dismissal.

The fourth factor, the public policy in favor of disposition of the case on the merits, "normally weighs strongly against dismissal." Gleason v. World Sav. Bank, FSB, Case No. 12-cv-03598-JST, 2013 WL 3927799, at *2 (N.D. Cal. July 26, 2013).  But "this factor 'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006).  We cannot say that the tardy service and inadequate status report created such a great delay as to trump the presumption in favor of resolution on the merits.  As such, this factor weighs against dismissal.

Fifth, we consider whether the bankruptcy court adequately considered and employed less drastic sanctions.  "The [trial] court need not exhaust every sanction short of dismissal before

_____

[11]  As Judge Fletcher stated in his dissent in Henderson, the defendant was not prejudiced by the plaintiff's tardy and incomplete submission of the draft pretrial order, where the defendant also did not expend sufficient effort to complete the order and was equally culpable.  779 F.2d at 1425 (Fletcher, J., dissenting).  The majority agreed that "no specific showing of prejudice to defendants is made[,]" but stated that the lack of prejudice was not determinative.  Id. at 1425.

15

finally dismissing a case, but must explore possible and meaningful alternatives." Henderson, 779 F.2d at 1424. An explicit discussion of alternatives is not mandatory, especially if the court actually tried alternatives or warned the plaintiff before ultimately dismissing the case. In re Eisen, 31 F.3d at 1454-55.

The bankruptcy court did not explicitly discuss or consider alternative sanctions. Given that it was still early in the proceedings, the court could have employed other sanctions, such as monetary or disciplinary sanctions against Mr. Amster. Accordingly, the court did not properly consider alternative and less drastic sanctions. This factor weighs against dismissal.

Weighing all of the relevant factors, we conclude that dismissing the adversary complaint for failure to prosecute at the initial status and scheduling conference was error. All of the Ninth Circuit decisions upholding a dismissal for failure to prosecute involve far more egregious circumstances than this case. See, e.g., id. at 1451 (dismissal was appropriate where, among other things, the plaintiff "had taken no action to prosecute in four years," the plaintiff's only excuse was the inability of his contingent fee counsel to finance the costs of litigation, and the delay inflicted actual prejudice on the defendant); Henderson, 779 F.2d at 1424 (dismissal was appropriate where the plaintiff missed four deadlines to submit a pretrial order despite the trial court's attempt to solve the problem by holding a status conference and establishing a discovery schedule); Anderson, 542 F.2d at 525 (affirming a dismissal for want of prosecution where the plaintiff willfully

16

failed to serve the complaint for a year without a reasonable explanation). Dismissal of this case for want of prosecution at the initial status and scheduling conference was inconsistent with the Ninth Circuit's precedent.

### 2. Violation of scheduling conference order

The scheduling conference order essentially required the parties to comply with the rules applicable to the scheduling conference and the early stages of the litigation, including Civil Rule 26, LBR 7026-1, and LBR 7016-1. Mr. Amster violated this order in multiple ways.

First, he failed to conduct a Civil Rule 26(f) meet-and-confer with Ms. Roessler-Lobert at least twenty-one days prior to the status conference. Instead, he called her four days before the status conference. Although the scheduling conference order set out specific topics for the parties to discuss and required that their discussion "be substantive and meaningful," the call lasted only eight minutes, and Mr. Amster merely tried to get Ms. Roessler-Lobert to agree that their conversation satisfied the Civil Rule 26(f) requirements.

Second, he tardily filed the unilateral status report. The scheduling conference order requires that a party file a unilateral status report seven days before the status conference. Instead, Mr. Amster filed the status report at 8:15 pm the night before the status conference, so that the court did not even have a chance to review it before the status conference the following morning.

Third, to compound these violations, Mr. Amster repeatedly attempted to blame the court for his failure to serve the summons

17

and scheduling conference order, insisting that the court had sent the summons to his old address in Van Nuys, California. In fact, the court had sent notice of the summons and scheduling conference order via CM/ECF to his e-mail address on file with the court and mailed a hard copy of the order to his address in Granada Hills. It is understandable that the bankruptcy court was frustrated with Mr. Amster's conduct.

Two of the Civil Rules permit a court to impose sanctions for violation of a pretrial order.

Civil Rule 16(f), which applies to bankruptcy proceedings by virtue of Rule 7016, provides:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>
> (A) fails to appear at a scheduling or other pretrial conference;
>
> (B) is substantially unprepared to participate - or does not participate in good faith - in the conference; or
>
> (C) fails to obey a scheduling or other pretrial order.

Rule 16(f)(1). Civil Rule 37, made applicable to bankruptcy proceedings though Rule 7037, authorizes the following court actions: prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; striking pleadings in whole or in part; staying further proceedings until the order is obeyed; dismissing the action or proceeding in whole or in part; rendering a default judgment against the disobedient party; or treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

18

Civil Rule 37(b)(2)(A).

Similarly, Civil Rule 41(b), which concerns dismissal of adversary proceedings, states that, "[i]f the plaintiff fails to . . . comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Civil Rule 41(b).

"The standards governing dismissal for failure to obey a court order are basically the same under" Civil Rules 16 and 41(b). Malone, 833 F.2d at 130. Further, that standard is mostly the same as the standard governing dismissals for failure to prosecute, with a few adjustments. Both employ the same five-factor test. Compare Malone, 833 F.2d at 130 (dismissal for violation of order), with Henderson, 779 F.2d at 1423 (dismissal for want of prosecution). The primary difference is that dismissal for want of prosecution requires a finding of unreasonable delay in addition to consideration of the five factors; in a case of dismissal for violation of an order, delay does not occupy the same central role (but it is relevant to an evaluation of prejudice).

There may also be a difference with respect to the violator's mental state. In a failure to prosecute case, the Ninth Circuit has expressly stated that dismissal does not require a finding of bad faith (although, as we have seen, the violator's mental state is relevant to some of the five factors). Henderson, 779 F.2d at 1425. In the leading case on dismissals for violations of court orders, Malone, the district court dismissed the plaintiff's case because she expressly refused to comply with an order requiring her to submit a list of her direct

19

examination questions. (The district court entered this order because the "confused and inefficient" presentation by plaintiff's counsel at the first trial had resulted in a mistrial.) The district court found that the violation was "flagrant," "deliberate and willful," and that the plaintiff had acted in "bad faith." Malone, 833 F.2d at 130. The Ninth Circuit itself characterized the violation as "intentional and unjustified." Id. at 131. Thus, there is some reason to think that, in order to justify a dismissal for violation of a court order, a degree of fault beyond sheer negligence is required (or at least relevant).

As we have explained, the five-factor test does not justify a dismissal of Ms. Lee's case for failure to prosecute. For the same reasons, the same test also does not justify a dismissal for failure to comply with the scheduling conference order. The record does not support any finding of fault beyond simple negligence. Although Mr. Amster's shoddy performance richly deserved some sanction, dismissal was not warranted.

**3.   Failure to comply with local rule**

LBR 7016-1(a) imposes specific requirements concerning the status and scheduling conference. Among other things, it requires the parties to file a joint status report (in a prescribed form) at least fourteen days before the status conference. If any party fails to cooperate in preparing a joint status report, each party must file a unilateral status report (also in a prescribed form) at least seven days before the status

20

conference.[12]

Mr. Amster did not comply with this rule. He made no serious effort to prepare a joint status report or engage Ms. Roessler-Lobert in the preparation of such a report. He filed a unilateral status report so tardily that the bankruptcy court could not review it before the status conference.

LBR 7016-1(f) authorizes sanctions for noncompliance, including "[a]n award of non-monetary sanctions against the party at fault including entry of judgment of dismissal . . . ." LBR 7016-1(f)(4). Subsection (g) also provides that if a party's counsel fails to "complete the necessary preparations" for the status conference, "the proceeding may be dismissed." LBR 7016-1(g).

A terminating sanction for noncompliance with a local rule is appropriate only if three criteria are met.

First, the noncompliance must involve an enhanced degree of fault, such as willfulness, bad faith, recklessness, or gross negligence, as compared to mere negligence or oversight. See R & R Sails, Inc. v. Ins. Co. of Pa., 673 F.3d 1240, 1247 (9th Cir. 2012) ("sanction [for discovery rule violation] amounted to dismissal of a claim, [so] the district court was required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith . . . and also to consider the availability of lesser sanctions"); Zambrano v. City of Tustin, 885 F.2d 1473, 1480 (9th Cir. 1989) (requiring a finding of recklessness, repeated disregard of court rules, gross negligence, or willful

_____

[12] LBR 7016-1 implements Civil Rule 16 (made applicable in bankruptcy proceedings through Rule 7016).

21

misconduct when issuing sanctions for violation of local rules); In re Singh, 2016 WL 770195, at *5 (overturning dismissal for violation of local rules where counsel was not grossly negligent or reckless).

Although it is clear that Mr. Amster did not comply with LBR 7016-1 and was negligent, arrogant, and disrespectful in handling Ms. Lee's case, we do not discern any greater fault, such as willfulness, bad faith, recklessness, or gross negligence that would warrant dismissal. See R & R Sails, Inc., 673 F.3d at 1247. He admittedly neglected her case in favor of a high-profile criminal case, but this deficient conduct does not rise to the level of bad faith warranting dismissal.

Second, the sanction must pass muster under the five-factor test of Henderson and Malone. As we have explained, the dismissal of Ms. Lee's adversary proceeding does not withstand scrutiny under that test.

Third, the court must consider whether the punishment is proportionate to the offense. Zambrano, 885 F.2d at 1480 ("any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power. This last principle includes a responsibility to consider the usefulness of more moderate penalties before imposing a monetary sanction."). To determine whether a sanction is proportionate, the court must consider the relative culpability of the party and her counsel. See In re Singh, 2016 WL 770195 at *7; see also Zambrano, 885 F.2d at 1475 n.4 ("minor problems created by counsel should not be visited upon the

22

litigants").[13]

The Dismissal Order was out of proportion to Mr. Amster's deficient conduct. Further, it is reasonable to assume that Ms. Lee was not culpable at all; it was early in the case and there was no evidence of notice of delay and noncompliance through documents in the record, significant passage of time without case progress, or any other indication of dilatoriness that would alarm Ms. Lee. Thus, the Dismissal Order was disproportionately harsh and unfairly punished Ms. Lee.

Accordingly, the bankruptcy court erred in dismissing Ms. Lee's case as a sanction for Mr. Amster's failure to comply with the court rules.[14]

---

[13] The Ninth Circuit's decisions on dismissals for failure to prosecute and for violation of court orders do not require a separate analysis of proportionality. This difference is more apparent than real, because the issue of proportionality is largely subsumed in the fifth factor under Malone and Henderson - the availability of less drastic sanctions.

[14] In appropriate circumstances, the bankruptcy court may dismiss an adversary complaint as a sanction for the attorney's failure to comply with pretrial orders and rules, including LBR 7026-1. In Glade Energy PTY Ltd. v. Rodriguez (In re Rodriguez), BAP No. CC-13-1256-DKiTa, 2013 WL 6697839 (9th Cir. BAP Dec. 19, 2013), the attorney for the plaintiff failed to cooperate in coordinating the Civil Rule 26 meeting and creating the joint status report, despite multiple attempts by the debtor's counsel to elicit the attorney's assistance. The bankruptcy court dismissed the complaint with prejudice, and the BAP subsequently affirmed.

However, Rodriguez is not binding on us and is readily distinguishable from this case in three key ways. First, the BAP determined that "the bankruptcy court clearly considered the adequacy of less drastic sanctions." 2013 WL 6697839 at *8. It noted that "the problem of missed deadlines had become systemic[,]" and the plaintiff's counsel ignored the debtor's attempts to comply with the rules, partly due to "difficulty
(continued...)

23

**B.    We need not address the Reconsideration Order.**

In light of our decision above reversing the Dismissal Order, we need not determine whether the bankruptcy court erred in denying the Motion for Reconsideration.

## CONCLUSION

Mr. Amster surely deserved some sanction, and possibly a serious one; he even conceded at oral argument that sanctions were "absolutely" warranted.  Such sanctions might include, but are not limited to, compensatory or appropriately coercive monetary sanctions,[15] see LBR 7016-1(f)(3) (sanctions for noncompliance may include an "award of monetary sanctions including attorneys' fees against the party at fault and/or counsel, payable to the party not at fault"), referral of Mr. Amster to a disciplinary committee, see United States Bankruptcy

---

[14](...continued)
understanding, in effect, what all the fuss was about."  Id.  As a result, the bankruptcy court determined that "a sanction stronger than a monetary sanction was warranted in this case." Id.  Second, the BAP found that the failure to prosecute prejudiced the debtor because the plaintiff's non-responsiveness made it difficult for the debtor to understand and defend against the complaint.  Id. at *9.  Prejudice was clear where the defendant actively defended the case, notwithstanding the plaintiff's failure to appropriately participate, and had filed a dispositive substantive motion which prematurely exposed litigation strategy.  Id.  Third, the misrepresentation in Rodriguez was much more substantial as it attempted to excuse the plaintiff's non-compliance by casting unwarranted aspersions on the defendant's counsel.  Id. at *4.

[15]    The Ninth Circuit has made clear that bankruptcy courts may not impose "serious punitive sanctions" and that "[c]ivil penalties must either be compensatory or designed to coerce compliance."  Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1192, 1195 (9th Cir. 2003) (citing F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1137-38 (9th Cir. 2001)).

24

Court for the Central District of California Fourth Amended General Order 96-05 (allowing bankruptcy judges to refer attorneys to a disciplinary committee), attorney suspension or disbarment, see In re Brooks-Hamilton, 400 B.R. 238, 246 (9th Cir. BAP 2009) ("Bankruptcy courts also possess the inherent authority to suspend or disbar attorneys, as implicitly recognized by Congress in enacting § 105(a)."), referral of Mr. Amster to the state bar, see Buechel v. Billingslea, No. 14CV2179-GPC NLS, 2015 WL 3874443, at *5 (S.D. Cal. June 23, 2015) (sanction of referring attorney to the state bar "fall[s] within the Bankruptcy Court's inherent power"), or a finding of contempt, see Civil Rule 37(b)(2)(A)(vii) (sanctions may include "treating as contempt of court the failure to obey any order").

But Mr. Amster's conduct did not justify the dismissal of the adversary proceeding at the initial status and scheduling conference. Therefore, we REVERSE the Dismissal Order and REMAND this case to the bankruptcy court for further proceedings, including the consideration of alternative sanctions.