# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHELLY LAL, individually and in
her representative capacity on
behalf of the Estate of Kamal L.
Lal, decedent, and in her
representative capacity as guardian
ad litem for Sagar Lal; ESTATE OF
KAMAL L. LAL; SAGAR LAL, a
minor,
       *Plaintiffs-Appellants,*

       v.

STATE OF CALIFORNIA; CALIFORNIA
HIGHWAY PATROL; FRANK NEWMAN;
MATTHEW OTTERBY,
       *Defendants-Appellees.*

No. 08-15645

D.C. No.
06-CV-05158-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
July 13, 2009—San Francisco, California

Filed June 25, 2010

Before: Cynthia Holcomb Hall, William A. Fletcher and
Richard A. Paez, Circuit Judges.

Opinion by Judge William A. Fletcher;
Dissent by Judge Hall

9303

**COUNSEL**

Sydney E. Fairbairn, Novato, California, Charles Stephen Ralston, East Chatham, New York, for the appellants.

Thomas A. Blake, John P. Devine, OFFICE OF THE CALIFORNIA ATTORNEY GENERAL, San Francisco, California, for the appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

Shelly Lal brought suit against the California Highway Patrol ("CHP") and officers Frank Newman and Matthew Otterby (collectively, "Defendants") for the shooting death of her husband. The district court dismissed her case with prejudice under Federal Rule of Civil Procedure 41(b) for failure to prosecute when her attorney failed to meet deadlines and attend hearings. When Lal later learned of her attorney's behavior and the dismissal of her suit, she hired a new attorney and filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). The district court denied the motion.

We reverse. We hold, pursuant to *Community Dental Services v. Tani*, 282 F.3d 1164 (9th Cir. 2002), that an attorney's gross negligence constitutes an extraordinary circumstance

warranting relief from a judgment dismissing the case for failure to prosecute under Rule 41(b).

## I. Background

Lal's husband Kamal Lal was shot and killed by CHP officers Newman and Otterby on March 6, 2005. On March 8, 2005, Lal retained Charles Spahr to represent her and her minor son. In December 2005, Spahr and his co-counsel Mark Webb filed suit against Defendants in state court on behalf of Lal, her son, and her husband's estate. On August 23, 2006, Defendants removed to federal court.

On November 15, 2006, the district court allowed Webb to withdraw. Spahr remained as Lal's attorney. On November 26, Defendants' counsel sent Spahr their initial Rule 26 disclosures. Spahr made no initial disclosures. Two days later, Defendants filed a case management statement. The initial case management conference was scheduled for November 30. Defense counsel and Spahr appeared at the scheduled time, but the court continued the conference to January 18, 2007. The court ordered counsel for both parties to confer before January 18 and ordered Spahr to provide Rule 26 disclosures within two weeks. Spahr did neither.

According to her sworn statement provided to the district court, Lal called Spahr in mid-December 2006 to check on the status of her case. She recounts that Spahr told her that he had participated in a conference call with defense counsel and the district court judge, that the judge wanted the parties to settle the case, and that the next meeting would take place in approximately two to three months. He did not tell her about the scheduled January 18 case management conference.

Neither Spahr nor Lal appeared at the January 18 management conference. Lal states that she did not know about the hearing and that she would have appeared, either with or without Spahr, had she known about it. On January 19, the

district court entered a written order directing Lal and Spahr to show cause why sanctions should not be imposed "including dismissal of the complaint for failure to prosecute and/or monetary sanctions for her repeated refusal to comply with the court's orders." The court set a hearing on the order to show cause for February 1 and warned that "[i]f plaintiff fails to appear her complaint will be dismissed."

Neither Lal nor Spahr appeared on February 1. Lal states that she did not know about this second hearing. At the hearing, counsel for Defendants stated that they had received no communications from Spahr and renewed a previous request that the court dismiss the case. The next day, in a written order, the district court dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

Lal states that she called Spahr in March to check on her case. She states that Spahr told her that Defendants needed more time for discovery. Lal left Spahr a voicemail on June 1. Spahr replied in a text message, telling Lal that he would call her that evening. But Spahr did not call. Spahr left a voicemail about a week later, telling Lal that he was in the process of filing pre-trial motions and that Webb had tentatively agreed to work on her case again.

Lal left another voicemail for Spahr in August, but he did not respond. Lal then called Webb's office and left a message for Webb. Webb also did not respond. Lal left another voicemail for Spahr in September. He finally returned her call on September 21. He told her he had scheduled depositions in her case for late November. When Lal asked about additional depositions, Spahr said it would be better to wait to discuss her case until Webb returned the following week. Spahr then scheduled a conference call for himself, Webb, and Lal for September 25. Spahr did not call at the time scheduled for the conference call. Lal called Spahr 30 minutes later and left a voicemail. She then sent him an email the next day about their

failed conference call. She received no response to either her voicemail or email.

Lal states that she called attorney Wynn Herron at about this time to "get a second opinion." Herron returned her call on October 1, 2007. He told Lal that the district court had dismissed her case on February 2, 2007, because Spahr had failed to appear for a hearing. Lal states that she was shocked and told Herron she was never informed of this development. Herron advised her to file a complaint with the California State Bar. Lal asked Herron about the merits of her case, but Herron told Lal that he did not handle such cases.

Lal states that she called Spahr later that same day. Spahr told her that he had missed the district court hearing for a good reason and that he had re-filed her case in state court. Lal asked for copies of the papers he filed, along with the case numbers. Lal then called Herron again and asked him to find the state court case Spahr claimed he filed on her behalf. Herron could find no pending cases filed on behalf of Lal or her son.

Lal states that she called Spahr the next day, October 2, to get copies of the documents he claimed to have filed. Spahr told her he needed 24 to 48 hours to retrieve the documents, that he had moved offices, and "if anything fell through the cracks, that he would make it up to me." Lal was distraught and spoke to her priest, who called Spahr. Spahr left Lal a message on her voicemail at work at 7:00 p.m. on October 3, suggesting that they set up a meeting the next morning to discuss Spahr's plans for Lal's case. Lal states that she was not at work on the morning of October 4, and did not receive the message in time to meet with Spahr. It is unclear whether the meeting would have actually taken place if Lal had received the message in time.

Lal filed a complaint with the State Bar eight days later, on October 12. Spahr called her that same day and told her he

was filing a "pre-hearing motion" in her case. Lal again asked for copies of all of the documents filed in her case. After not receiving anything for another two weeks, Lal called Spahr again. Spahr said he would deliver the papers to her house that evening, but he never came.

Lal called the State Bar in November and spoke with Willis Shalita, the investigator assigned to her complaint. Shalita advised Lal to get another attorney. Lal attempted to retain attorney Paula Canny that same day. Lal was told that Canny was undergoing chemotherapy and might not be able to take on her case, and that she would need to read everything before making a decision. Lal states that a person in Canny's office told her "a couple of weeks later" that Canny had a conflict of interest and could not represent her.

Lal then called several other attorneys, all of whom declined to help her. On December 27, Lal contacted attorney Sydney Fairbairn. Fairbairn advised Lal to demand that Spahr turn over her case files and to hire a service to obtain copies of her case files from federal and state court. Lal called Fairbairn back four days later to say that she had hired a service. She then met with Fairbairn on January 5, 2008. Lal formally retained Fairbairn on January 22.

On January 25, 2008, Fairbairn filed a motion for substitution of counsel and a motion for relief from judgment under Federal Rule of Civil Procedure 60. The Rule 60 motion was supported by sworn declarations from Fairbairn and Lal.

The district court held a hearing on the Rule 60 motion for relief from the dismissal for failure to prosecute on March 5, and denied the motion two days later. The court expressed doubt about the applicability of our decision in *Tani*, 282 F.3d 1164, in which we held that an attorney's gross negligence was a ground for granting a motion for relief from a default judgment. The court went on to hold that, even if *Tani*

applied, Lal had not diligently pursued relief under Rule 60(b)(6) and that her delay prejudiced Defendants.

Lal timely appealed.

## II.   Standard of Review

We review for abuse of discretion a district court's dismissal of an action under Federal Rule of Civil Procedure 41(b) for failure to prosecute. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1129 (9th Cir. 2008). We also review for abuse of discretion a district court's decision to deny a Rule 60(b) motion. *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1031 (9th Cir. 2008). We review de novo "any questions of law underlying the district court's decision" to deny a Rule 60(b) motion. *Jeff D. v. Kempthorne*, 365 F.3d 844, 850-51 (9th Cir. 2004).

## III.   Discussion

Lal appeals both the district court's order dismissing her action for failure to prosecute and the order denying her motion for relief from judgment. We address each in turn.

### A.   Dismissal for Failure to Prosecute

The district court dismissed Lal's suit under Rule 41(b) on February 2, 2007. Rule 41(b) states that "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudication on the merits." The district court order dismissing Lal's action did not state otherwise and was therefore an adjudication on the merits. Because the dismissal order ended Lal's suit on the merits, it is a final decision appealable under 28 U.S.C. § 1291.

**[1]** Federal Rule of Appellate Procedure 4(a)(1)(A) provides, "In a civil case . . . the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment

or order appealed from is entered." Lal filed her notice of appeal on March 24, 2008, over one year after the district court dismissed her action. Under the version of Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) then in effect, the 30-day deadline for filing a notice of appeal started to run from the time the court entered an order disposing of a Rule 60 motion, so long as the Rule 60 motion was filed "no later than 10 days after the judgment [was] entered."[1] However, Lal filed her Rule 60 motion on January 25, 2008, long after the court's February 2, 2007 dismissal order. We therefore do not have jurisdiction to review the district court's dismissal of Lal's action for failure to prosecute.

## B.   Relief from Judgment

**[2]** Federal Rule of Civil Procedure 60(b) provides, in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . .
>
> (6) any other reason that justifies relief.

A motion under Rule 60(b)(6) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). We use Rule 60(b)(6) "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). To receive relief under Rule 60(b)(6), a party must demonstrate "extraordinary circumstances which prevented or rendered him unable to prosecute [his case]." *Tani*, 282 F.3d at 1168 (citing *Martella v. Marine*

---

[1]Rule 4(a)(4)(A)(vi) was amended in 2009 to provide a 28-day limit rather than a 10-day limit for filing the Rule 60 motion. At all times relevant to this case, the 10-day limit applied.

*Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir. 1971) (per curiam)).

**[3]** An attorney's actions are typically chargeable to his or her client and do not ordinarily constitute extraordinary circumstances warranting relief from judgment under Rule 60(b)(6). *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962); *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989). But there are exceptions to this general principle. In *Community Dental Services v. Tani*, 282 F.3d 1164 (9th Cir. 2002), we joined the Third, Sixth and Federal Circuits in holding that an attorney's gross negligence constitutes such an extraordinary circumstance. We followed the Third Circuit in defining gross negligence as "neglect so gross that it is inexcusable." *Id.* at 1168 (quoting *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 978 (3d Cir. 1978)).

**[4]** The attorney in *Tani* "virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so" and deliberately deceived his client about what he was doing (or not doing). *Id.* at 1170-71. The district court issued a default judgment. When Tani learned of the default judgment, he promptly hired a new attorney and filed a motion for relief from the default judgment under Rule 60(b)(6). *Id*. at 1167. The district court denied the motion.

**[5]** We held that the behavior of Tani's first attorney constituted gross negligence and that the district court abused its discretion in refusing to grant Tani relief under Rule 60(b)(6). We wrote, "[C]onduct on the part of a client's alleged representative that results in the client's receiving practically no representation at all clearly constitutes gross negligence, and vitiat[es] the agency relationship that underlies our general policy of attributing to the client the acts of his attorney." *Id*. at 1171.

**[6]** We apply *Tani* to this case and hold that an attorney's gross negligence resulting in dismissal with prejudice for fail-

ure to prosecute constitutes an "extraordinary circumstance" under Rule 60(b)(6) warranting relief from judgment. Dismissal with prejudice under Rule 41(b) for failure to prosecute is the converse of a default judgment. In both instances, the consequence of the attorney's action (or inaction) is a loss of the case on the merits. The only significant difference is that the plaintiff rather than the defendant suffers the adverse judgment.

Our holding is consistent with *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097 (9th Cir. 2006). The plaintiff-appellant in *Latshaw* requested Rule 60(b)(6) relief from a judgment resulting from her acceptance of an offer of judgment under Federal Rule of Civil Procedure 68. *Id.* at 1102-03. She stated that she accepted the offer based on her attorney's coercion and erroneous legal advice, and she argued that his conduct constituted gross negligence meriting Rule 60(b)(6) relief. *Id.* We distinguished default judgments, which are disfavored, from Rule 68 judgments, which are "actively supported" by courts. *Id.* at 1103. We therefore declined to extend *Tani* to allow relief from judgments entered under Rule 68, holding that the plaintiff-appellant's attorney's conduct, even if grossly negligent, did not constitute grounds for Rule 60(b)(6) relief.

A dismissal for failure to prosecute under Rule 41(b) is much more like a default judgment than a Rule 68 judgment. We based our decision in *Tani* on "the well-established policy considerations we have recognized as underlying default judgments and Rule 60(b)." *Tani*, 282 F.3d at 1169. The same policy considerations underlie dismissal for failure to prosecute. We have stated that dismissal under Rule 41(b) "is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996). This is almost identical to our stance on default judgments, which are "appropriate only in extreme circumstances." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam).

It is obvious that the conduct of Lal's attorney constituted gross negligence. The facts recounted in Lal's sworn statement are not disputed. The similarities between the attorney's conduct in *Tani* and Spahr's conduct in this case are striking. First, both attorneys "virtually abandoned [their] client[s] by failing to proceed with [their] client[s'] [case] despite court orders to do so." *Tani*, 282 F.3d at 1170. The attorney in *Tani* filed the answer late and never provided plaintiffs with a copy. He "failed to contact [plaintiff] for preliminary settlement discussions despite being ordered to do so, failed to oppose [plaintiff's] motion to strike the answer, and failed to attend various hearings." *Id.* at 1171. Spahr failed to make initial Rule 26 disclosures after being ordered to do so; failed to meet, confer, and participate in the joint case management conference after being ordered to do so; and failed to attend hearings.

**[7]** Second, both the attorney in *Tani* and Spahr "deliberately misle[d] [their clients] and depriv[ed] [them] of the opportunity to take action to preserve [their] rights." *Id.* Tani's attorney "explicitly represented to Tani that the case was proceeding properly." *Id.* Tani only learned of the default judgment against him when the judgment was mailed to his office. *Id.* at 1167. Similarly, Spahr continued to tell Lal that her case was moving forward even after it had been dismissed. In mid-December 2006, Spahr told Lal that the next meeting on her case would be in two to three months, even though the case management conference was scheduled for January 18, 2007. Although the district court had dismissed Lal's action for failure to prosecute on February 2, 2007, Spahr told her in March that Defendants needed more time for discovery. On September 21, 2007, Spahr lied to Lal, telling her he had scheduled depositions in her case for November. On October 1, Spahr told Lal that he had re-filed her suit in state court. On October 12, Spahr told Lal he was filing a "pre-hearing motion" in her case. Throughout October, Spahr repeatedly assured Lal that he would give her copies of all of the documents he falsely claimed to have filed in her case. In

these circumstances, we hold that Spahr acted with gross negligence and that Lal has demonstrated "extraordinary circumstances" beyond her control that merit relief under Rule 60(b)(6).

After expressing doubt about whether *Tani* should be applied to grant Rule 60(b)(6) relief from a dismissal for failure to prosecute under Rule 41(b), the district court went on to deny relief even on the assumption that *Tani* applied. The court relied on two grounds.

**[8]** First, the district court held that Lal had not pursued Rule 60(b)(6) relief diligently. We disagree. Not quite four months elapsed between when Lal learned on October 1, 2006 that her case had been dismissed and when she filed her motion for relief. During all of October, Spahr told her that he was working on her case. Two weeks after learning that her case had been dismissed, Lal filed a complaint with the State Bar. Lal called the State Bar in November and tracked down the investigator assigned to her complaint. The investigator advised her to get a new attorney. Lal contacted Paula Canny's office that same day. Canny took "a couple of weeks" before deciding not to take the case. Lal then contacted several other attorneys, none of whom agreed to take her case.

On December 27, 2007, Lal contacted Sydney Fairbairn. Fairbairn told Lal how to obtain copies of the documents filed in her case. Lal obtained the documents and met with Fairbairn on January 5, 2008. Fairbairn then acted promptly to assess Lal's case. Fairbairn filed a substitution of attorney motion and a Rule 60(b)(6) motion, accompanied by sworn statements, on January 25.

Second, the district court held that Defendants would suffer significant prejudice if Lal's Rule 60(b)(6) motion were granted. Here, too, we disagree. The court relied on a declaration from Professor Robert Bjork, Chair of the Psychology

Department at the University of California, Los Angeles. Bjork specializes in "directed forgetting," which he describes as the "forgetting process triggered by an explicit or implicit instruction that some information presented or studied earlier should now be forgotten." Defendants' counsel had sent defendants Newman and Otterby letters dated March 22, 2007, informing them that Lal's case had been dismissed on the merits and that the dismissal was final because the time for appealing the order had lapsed. Bjork stated that the dismissal of Lal's case "served as an unambiguous cue to the officers that they were free to move on with their lives—and free to not keep remembering and replaying memories of a highly traumatic episode that happened almost two years earlier." Bjork stated that "the officers' testimony will be lacking in the color and detail expected of police officers in such situations, meaning, among other things, that it may appear less credible than it would have had the officers not been lead to believe that the resolution in their favor was final."

Newman and Otterby shot and killed Lal's husband on March 6, 2005. Lal's case was dismissed almost two years later, on February 2, 2007. On March 22, 2007, Defendants' counsel informed Newman and Otterby that Lal's case had been dismissed. Ten months elapsed between the time they were informed that the case had been dismissed and the time Lal filed her Rule 60(b)(6) motion on January 25, 2005. Even if it is true that Defendants' memories significantly deteriorated during these ten months, and that this deterioration was assisted by what Professor Bjork calls "directed forgetting," we do not agree with the district court that such a deterioration would constitute sufficient prejudice to warrant denying Lal's motion.

[9] Defendants' initial disclosures, filed in the district court in November 2006, make clear that there were eleven CHP officers besides Newman and Otterby who were "witnesses on scene at [the] time of the incident." An undisclosed number of "witness officer interviews" were conducted by yet

another CHP officer. The CHP conducted an investigation of the shooting, and there are tape recorded statements of twelve CHP officers taken in connection with that investigation. Finally, there are written transcripts of contemporaneous statements by both Newman and Otterby. Given this wealth of evidence, despite whatever "directed forgetting" Newman and Otterby might have done, Defendants cannot convincingly argue that the evidence in this case has been so compromised as a result of any delay in bringing a Rule 60(b)(6) motion that they have been substantially prejudiced.

## Conclusion

**[10]** For the foregoing reasons, we hold that Lal's Rule 60(b)(6) motion for relief from judgment should have been granted. We reverse the judgment of the district court and remand for further proceedings.

**REVERSED and REMANDED.**

---

HALL, Circuit Judge, dissenting:

I agree with the majority that we do not have jurisdiction to entertain an appeal from the underlying dismissal for failure to prosecute. I must respectfully dissent, however, from the balance of the majority opinion. I disagree with the majority's conclusion that the district court abused its discretion in denying the Rule 60(b) motion. I do not believe that *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164 (9th Cir. 2002), applies to a dismissal for failure to prosecute, and even if it were applicable, the district court acted within its discretion in denying Lal's motion.

## I.

The district court assumed *arguendo* that our decision in *Tani* could apply to allow a party relief from judgment in

cases of gross attorney negligence in circumstances beyond default judgments. The majority opinion addresses this issue directly and approves this extension of *Tani*. I disagree.

We have never held that *Tani* applies outside the context of relief from a default judgment. We have held, to the contrary, that "[o]ur decision in *Tani* was explicitly premised upon the default judgment context of the case." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006). The majority circumvents this limitation by concluding that a dismissal for failure to prosecute is the "converse" of a default judgment, and that the only difference between the two types of dismissals is the party that suffers the adverse judgment.

There are important distinctions between dismissals for failure to prosecute and default judgments. It is a plaintiff's burden to prosecute a case, and we have previously stated that a litigant has "a duty to keep track of the progress of their lawsuit," even when represented by counsel. *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989). A plaintiff chooses when and where to bring a case, and which claims to bring, whereas a defendant subject to a default judgment lacks such fundamental control over a lawsuit and may have been deprived of the opportunity to respond to allegations against him or her.

Accordingly, in *Link v. Wabash R.R. Co.* the Supreme Court held that it was proper for a court to dismiss an action under Rule 41(b) for failure to prosecute where the plaintiff was not aware of, or was faultless in, the attorney's negligence:

> There is certainly no merit to the contention that dismissal of the petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions

> of this freely selected agency . . . And if an attor-
> ney's conduct falls substantially below what is rea-
> sonable under the circumstances, the client's remedy
> is against the attorney in a suit for malpractice. But
> keeping this suit alive merely because the plaintiff
> should not be penalized for the omissions of his own
> attorney would be visiting the sins of plaintiff's law-
> yer upon the defendant.

370 U.S. 626, 633-634 & n.10 (1962). Even though the plain-
tiff in *Link* may have lost the opportunity to recover from the
defendant for his personal injuries, the Supreme Court rea-
soned that the defendant should not be penalized for the mis-
conduct of plaintiff's lawyer. The plaintiff's proper avenue of
relief after a dismissal for failure to prosecute was to seek
damages from his attorney in a malpractice lawsuit.

Our decision in *Tani* spells out why a malpractice lawsuit
may be an ineffective remedy for a default judgment, and in
doing so demonstrates why a default judgment is more likely
to have irreparable consequences than a dismissal for failure
to prosecute. Tani was subject to a $2 million default judg-
ment enjoining him from continuing to use his business name.
Even if he were able to recover in a malpractice action some
day in the future, in the interim he might need to sacrifice sig-
nificant personal and business assets and drastically cut back
on his familial expenses in order to satisfy the judgment. 282
F.3d at 1171-72. The malpractice suit also would not restore
Tani's ability to use his business name and the intangible
business benefits that ensue from continued use of that name.
*Id*. at 1172.

The dismissal of Lal's lawsuit for failure to prosecute, like
the dismissal of the lawsuit in *Link*, does not raise similar
inequities. As the Supreme Court has indicated, Lal can be
compensated through a malpractice action against her attor-
ney, and she will not be saddled with a substantial money
judgment or injunction in the interim. A plaintiff who has suf-

fered bodily, emotional or economic injuries certainly may be forced to bear the costs of those injuries until the resolution of a malpractice suit, but the protracted nature of civil litigation likely would have forced plaintiff to bear these costs had the initial lawsuit proceeded to a judgment on the merits. The consequences to Lal of dismissal of her lawsuit for failure to prosecute do not justify a departure from the usual lawyer-client agency principles set forth in *Link*, and therefore her lawyer's misconduct does not constitute the "extraordinary circumstances" required for relief under Rule 60(b)(6).

## II.

Even if *Tani* were applicable in the context of dismissal for failure to prosecute, I do not believe the district court abused its discretion in its application of *Tani*.

A district court abuses its discretion when it applies the incorrect legal standard or its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal citations and quotation marks omitted). We may not "simply substitute our view for that of the district court," and we must be "left with the definite and firm conviction that a mistake has been committed." *Id.* The majority fails to afford sufficient deference to the judgment of the district court.

The district court relied on two primary factors in denying Lal's motion: (1) Lal's four month delay in pursuing the motion after discovering the dismissal, and (2) prejudice to defendants.

The majority finds that Lal acted diligently during the four months between learning of the dismissal of her lawsuit and filing the Rule 60(b) motion. It first credits Lal's statement that she continued to be "represented" and "misled" by Spahr

throughout October. This conclusion, however, is at least arguably belied by her filing a complaint with the State Bar on October 12, 2007 and by calling another attorney on October 1, 2007 to confirm that Spahr was lying about refiling her action in state court. The majority next emphasizes Lal's efforts to secure a lawyer in November, December and January, yet, as pointed out by the district court, Lal also stated in her declaration that she would have appeared in court without her attorney had she known about the hearing her attorney missed. She filed a *pro se* complaint against her attorney with the California bar less than two weeks after learning of the dismissal, yet she made no contact with the district court in the four months preceding her Rule 60(b) motion. Lal found representation just *two days* after her husband's death, and represented to the court that she would have "gotten legal representation elsewhere a long time ago" had she known about Spahr's problems. Even though the record might arguably support the majority's conclusion that Lal acted diligently, it also supports the district court's conclusion to the contrary.

The district court's finding of prejudice to defendants is also supported. It relied primarily on an expert opinion submitted by defendants regarding the effects of memory loss on the officers' testimony. Three years had passed since the shooting of Lal's husband and almost one year had passed since the officers were "prompted" to let go of their memories of the event through notification of the final order of dismissal. Nevertheless, the majority cites to the existence of several percipient witnesses and contemporaneous interviews and concludes that "Defendants cannot convincingly argue" that they would be substantially prejudiced "even if it is true that Defendants' memories significantly deteriorated during these ten months" between dismissal and the Rule 60(b) motion. Defendants, however, bear no burden of establishing prejudice. The burden is entirely upon the moving party to demonstrate "extraordinary circumstances" beyond their control, and the court to evaluate the equities involved. The district court found the expert opinion credible and persuasive,

and Lal did not object to the district court's reliance on the expert testimony at the hearing.

We have stated repeatedly that Rule 60(b)(6) motions should be used sparingly, *see, e.g.*, *Latshaw*, 452 F.3d at 1103, and the district court acted within its discretion in denying Lal's motion. The district court was entitled to weigh the equities as presented by the record before it, and in my view the majority improperly supplants its own views for the reasoned analysis of the district court.

## III.

I would AFFIRM the district court's denial of Lal's motion for relief from the dismissal. Accordingly, I dissent.