**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. CC-13-1282-TaKuPa |
| ) | |
| MARCELO BRITTO GOMEZ, ) | Bk. No. 2:11-bk-26905-TD |
| ) | |
| Debtor. ) | Adv. No. 2:11-ap-02360-RK |
| _____) | |
| ) | |
| CARTER STEPHENS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| MARCELO BRITTO GOMEZ; UNITED ) | |
| STATES TRUSTEE, ) | |
| ) | |
| Appellees. ) | |
| _____) | |

Argued and Submitted on July 27, 2017
at Pasadena, California

Filed – August 21, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Thomas B. Donovan, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Carter Stephens argued pro se; Douglas Crowder argued for appellee Marcello Britto Gomez.

_____

Before:    TAYLOR, KURTZ, and PAPPAS,[**] Bankruptcy Judges.

_____

[*]    This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

[**]    The Honorable Jim D. Pappas, United States Bankruptcy Judge for the District of Idaho, sitting by designation.

**INTRODUCTION**

Seven months after Carter Stephens filed a dischargeability adversary complaint against chapter 7[1] debtor-defendant Marcelo Gomez, the bankruptcy court dismissed it for lack of prosecution. In that time, Stephens and his attorney had done virtually nothing to move the case forward. By contrast, Debtor had, by and large, diligently defended and participated in the case. As it turns out, Stephens's relationship with his attorney had soured. On remand from the Ninth Circuit, we determine that the bankruptcy court properly dismissed the case for lack of prosecution. We reject Stephens's argument that only his attorney was responsible for the delay and inattention that led to dismissal. The bankruptcy court repeatedly admonished Stephens that he needed to prosecute the case. He did not do so. Accordingly, we AFFIRM.

**FACTS**[2]

Stephens retained attorney Lori Smith to represent him in litigation against Debtor. After Debtor filed a chapter 7 case, Smith — on Stephens's behalf — filed a § 523(a)(2)(A) and (a)(6)

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

nondischargeability complaint.[3]  After that, however, Smith's activity in the case was sporadic at best.

**The September 1 status conference.**  The bankruptcy court scheduled an initial status conference for September 1, 2011, under LBR 7016-1(a).[4]  Debtor filed an LBR 7016-1 status report[5] before the hearing; Stephens filed nothing.  Similarly, Debtor and his counsel appeared at the initial status conference; Smith did not.  Neither Smith nor anyone from Smith's office explained her non-attendance to the bankruptcy court (or to Stephens, for that matter).  The bankruptcy court continued the status conference to the end of the month.

After the bankruptcy judge continued the hearing, he learned that Stephens was present.  At that time, he explained to Stephens that Smith failed to appear and also failed to file a required pre-hearing status report.  Further, he disclosed to Stephens that Debtor's status report mentioned a possible settlement, which allegedly failed based on Stephens's change of mind.  Stephens expressed surprise at this news and indicated

---

[3]  The complaint alleged fraud stemming from a business partnership dispute between the parties.

[4]  LBR 7016-1(a) and (a)(2) provide that the bankruptcy clerk issues a summons and notice of the status conference and that the parties are required to file a joint status report at least 14 days prior to each scheduled conference.

[5]  Debtor's counsel's declaration stated that Smith's office emailed a joint report on August 12, 2011 that was essentially blank on Stephen's end and was not executed by Smith or anyone at Smith's office.  Consequently, when filed, it was deemed a unilateral status report by Debtor pursuant to LBR 7016-1(a)(3).

that he was unaware of any settlement discussions.

Stephens then inquired whether he, in fact, was represented by Smith. In response, the bankruptcy court stated:

> Well, you have a couple options. You can fire Ms. Smith and hire another lawyer or you can fire Ms. Smith and represent yourself. One way or the other, you have to do something to move this case ahead from your stand point, and one way or another Ms. Smith has some obligations. I would suggest you start by talking to Ms. Smith. If that's a dead end, then why don't you [pick] up the phone and call [Debtor's counsel] and see what you can work out.

Hr'g Tr. (Sept. 1, 2011) 10:10-17.

Stephens advised that he had called Smith multiple times, to no avail, and that he did not trust Smith. The bankruptcy court emphasized that Stephens was obligated as the plaintiff to file a status report as required by the local bankruptcy rules, irrespective of Smith's deficient representation.

**The September 29 status conference**. Smith filed a status report two weeks after the initial status conference. Both Smith and Stephens appeared at the September 29, 2011 status conference. The bankruptcy judge reemphasized the obligations of the parties in the adversary proceeding to prosecute and defend the case expeditiously. He also warned both parties that failure to do so could lead to appropriate sanctions. Hr'g Tr. (Sept. 29, 2011) 6:1-4 ("If the Plaintiff drops the ball, I can dismiss the lawsuit. If the Defendant drops the ball, I can preclude the Defendant from offering evidence down the road in the lawsuit."). But he highlighted that the responsibility was ultimately on Smith as counsel for Stephens, the plaintiff, to move the case along. The bankruptcy judge set a discovery cutoff deadline and directed Smith to lodge a proposed

4

scheduling order. Smith, in turn, represented that the parties sought mediation and that a proposed mediation order would be filed. The hearing concluded with the bankruptcy judge reiterating his frustration with the case because of the lack of reports and warning that the case may be heading toward dismissal.

Notwithstanding the bankruptcy court's orders and Smith's representations, Smith filed nothing. Sometime during this time frame, however, Stephens filed a complaint against Smith with the State Bar of California.

**The February 2 status conference and case dismissal.** In anticipation of a continued status conference in February of 2012, Debtor's counsel filed another unilateral LBR 7016-1 status report.[6] Neither Smith nor Stephens filed a status report. Consequently, Debtor moved to dismiss the adversary proceeding with prejudice pursuant to LBR 7041-1 and Civil Rule 41(b). Among other things, he argued that Stephens's failure to comply with either the discovery deadline or LBR 7016-1 warranted dismissal. The motion to dismiss was scheduled for hearing in mid-February.

At the status conference in early February, the bankruptcy judge began by noting that the case was seven months old.

---

[6] Once again, Debtor's counsel's declaration provided that she had twice contacted Smith's office regarding the joint report but did not hear back in time to timely file a joint report as required by the local rules. LBR 7016-1(a)(3) provides that if a party fails to cooperate in preparing a joint status report and an answer has been filed, the parties must each submit a unilateral status report at least seven days before the scheduled conference.

5

Despite this age, he concluded:

> [T]he Plaintiff has [pretty consistently] not complied with our Local Rules. The Plaintiff has not taken the active role that plaintiffs are supposed to take. Plaintiffs are supposed to prosecute their lawsuits, and they're supposed to do it diligently, and they're supposed to do it by sharing information with the other side by talking to the other side, by initiating status reports, by doing that on a timely basis, by doing that before every hearing. And in this case, and we are now on our – we're on our third hearing, but we've pretty consistently not had much of a showing of any compliance with the standards that I've outlined from the Plaintiff's side.

Hr'g Tr. (Feb. 2, 2012) 1:22-2:8. Debtor, by contrast, the bankruptcy judge remarked, "has fairly consistently taken the initiative to take care of its side of the bargain by filing reports." Id. at 2:9-11.

The bankruptcy judge expressed his concern that, if the matter went to trial in two weeks as Debtor wanted, then because of Stephens's disorganization and ineffective prosecution, "we'll have a mess of a trial on our hands." Id. at 3:5-14. And he expressed his frustration that he was told the parties were going to mediate, but a mediation order was never lodged, and that the case was going to settle, but then it did not.

Smith then explained that "there has been a complete and irredeemable breakdown of relationship between the client and the attorney." Id. at 4:16-18. And the discussion turned to that topic. Stephens, who spoke after Smith, concluded his presentation by requesting time to find new counsel.

After hearing from both Stephens and Smith, the bankruptcy judge orally dismissed the adversary proceeding based on lack of diligent prosecution. In addition to the above reasons, he again noted that the case had been pending for seven months and

6

added: "for me to learn this at a status conference hearing, and not in formal pleadings from one side or the other, is inexcusable, and an inexcusable burden on the [Debtor], and on the legal process, and on this Court." Id. at 9:14-20. On February 8, 2012, the bankruptcy court entered an order dismissing the adversary proceeding for lack of prosecution.

Acting pro se, Stephens moved for reconsideration of the dismissal order on February 27, 2012. He did not obtain a hearing date and did not properly notice or serve the motion. Two days later, the bankruptcy judge denied the reconsideration motion by writing "motion denied" on its face. Stephens appealed.

**Stephens's appeals.** In that first appeal, a BAP motions panel determined that the appeal from the dismissal order was untimely. It limited the scope of the review to the order denying the reconsideration motion. Later, a BAP merits panel vacated the order denying reconsideration and remanded to the bankruptcy court for findings of fact and conclusions of law.

On remand, the bankruptcy judge prepared a memorandum decision and supported his decision to deny relief from the dismissal order based on both procedural deficiencies and substantive legal grounds. Stephens appealed.

In the second appeal, we affirmed the bankruptcy court's decision and concluded that the bankruptcy court did not abuse its discretion in denying reconsideration under Civil Rule 60(b). Stephens again appealed.

The Ninth Circuit then vacated and remanded; it determined that we erred in limiting the scope of Stephens's appeal to

7

reconsideration.  Thus, "[b]ecause the BAP did not reach the issue of whether the bankruptcy court properly dismissed Stephens's adversary proceeding for failure to prosecute," the Ninth Circuit remanded so we might consider the issue in the first instance.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in dismissing Stephens's adversary complaint for failure to prosecute.

Whether the bankruptcy court abused its discretion by denying the reconsideration motion.

## STANDARDS OF REVIEW

We review the bankruptcy court's dismissal of an adversary proceeding based on a plaintiff's failure to prosecute for an abuse of discretion. Olomi v. Tukhi (In re Tukhi), 568 B.R. 107, 112 (9th Cir. BAP 2017); Lee v. Roessler-Lobert (In re Roessler-Lobert), 567 B.R. 560, 567 (9th Cir. BAP 2017).

We review the bankruptcy court's denial of a motion for reconsideration for an abuse of discretion. Tracht Gut, LLC v. Cnty. of L.A. Treasurer & Tax Collector (In re Tracht Gut, LLC), 503 B.R. 804, 809 (9th Cir. BAP 2014).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts

8

in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

And we may "affirm on any ground supported by the record, regardless of whether the [bankruptcy] court relied upon, rejected, or even considered that ground." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014) (quotation marks omitted); Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp., 159 F.3d 412, 418 (9th Cir. 1998).

**DISCUSSION**

The bankruptcy court dismissed the case for failure to prosecute under Civil Rule 41(b). Civil Rule 41(b), applied in bankruptcy by Bankruptcy Rule 7041, provides that "[i]f the plaintiff fails to prosecute . . ., a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Although the text only discusses a party's motion, the bankruptcy court has "the inherent power sua sponte to dismiss a case for lack of prosecution." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986). Although state of mind is relevant when evaluating an excuse, no showing of bad faith is required for the bankruptcy court to dismiss the case under its inherent power. In re Roessler-Lobert, 567 B.R. at 568 n.8.

"Dismissal [however] is a harsh penalty and is to be imposed only in extreme circumstances." Id. The bankruptcy court must weigh several factors, known as the Henderson factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

9

favoring disposition of cases on their merits[,] and (5) the availability of less drastic sanctions." Henderson, 779 F.2d at 1423; In re Roessler-Lobert, 567 B.R. at 568; In re Tukhi, 568 B.R. at 114. Further, the dismissal "must be supported by a showing of unreasonable delay." Henderson, 779 F.2d at 1423.

Although specific findings are beneficial to the reviewing court, the bankruptcy court "is not required to make specific findings on each of the essential factors." Moneymaker v. CoBen (In re Eisen), 31 F.3d 1447, 1451 (9th Cir. 1994). If there are no explicit findings, we review the record independently. Id.

### A. The bankruptcy court did not err in dismissing the adversary proceeding for lack of prosecution.

As a preliminary matter, we note the particular posture of this appeal and the manner in which Stephens's briefing addressed it. We have recounted its procedural path above. In short, a BAP motions panel limited the scope of appeal to the order denying reconsideration; the Ninth Circuit determined that this was an error; accordingly, it vacated and remanded so we may consider the issue of whether the bankruptcy court properly dismissed Stephens's adversary proceeding for failure to prosecute.

Stephens's briefing on remand, however, is aslant of the remanded issue. He acknowledges that failure to prosecute is the issue, but he then reasserts and reargues that "[t]his appeal remains a request for 60(b) relief." Appellant's Amended Response to Remand from Ninth Circuit, and Reasons for Failure to Prosecute ("Amended Opening Brief on Remand") at 3.

Stephens neither discusses the five Henderson factors nor

10

explains why the bankruptcy court erred in dismissing the case for failure to prosecute. He, thus, conceivably waived that issue on appeal. See Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (per curiam) (appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief"). The Ninth Circuit, however, remanded so we may consider the issue in the first instance; we will do so. And Stephens is pro se, so we liberally construe his brief to the extent there is any conceivable overlap. See Cruz v. Stein Strauss Trust # 1361 (In re Cruz), 516 B.R. 594, 604 (9th Cir. BAP 2014).

In his briefing, Stephens pins the dismissal solely on his attorney. See Appellant's Amended Opening Brief on Remand passim; e.g., id. at 3 ("For these listed reasons, appellant feels and knows that the whole failure of the case to move forward in a progressive way was totally the fault of his neglectful attorney . . . ."). But Stephens never argues that the bankruptcy court erred in dismissing his case for lack of prosecution. At one point, he appears to concede the operative issue: "This inaction [i.e., not filing a status report] by itself, is grounds for a dismissal of appellant[']s case. This action of not preparing Status Reports was committed twice by appellant[']s attorney Smith, and the trial was continued." Id. at 4. Instead, he strenuously contends that he was not at fault for the dismissal—his attorney was. But that is not a reason to reverse the bankruptcy court's decision. Nevertheless, despite Stephens's failure to discuss them, we now consider the five Henderson factors.

11

**The public's interest in expeditious resolution of litigation**. This factor typically weighs in favor of dismissal. In re Roessler-Lobert, 567 B.R. at 568 (citing Yourish v. Cal Amplifier, 191 F.3d 983, 990 (9th Cir. 1999)). "But not any delay will justify dismissal; rather, the deficient conduct must result in unreasonable delay." Id. (citing Henderson, 779 F.2d at 1423 and In re Eisen, 31 F.3d at 1451). We give deference to the bankruptcy court "to decide what is unreasonable because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." In re Eisen, 31 F.3d at 1451 (quotation marks omitted); see Henderson, 779 F.2d at 1424.

Here, the bankruptcy court indirectly found, and we agree, that the delay in this case was unreasonable. In the bankruptcy court's judgment: "[Smith and Stephens] were abusing Mr. Gomez by their lack of diligence and by delaying the trial and disposition that Gomez was seeking actively as early as November 1, 2011, as stated in [Debtor's] August 24, 2011 status conference report and emphasized again in [Debtor's] timely appearance and comments at the September 1 hearing." Bankruptcy Court's Memorandum Decision Regarding Remand, AP Dkt. No. 44 ("Bkcy. Ct. Mem. Dec. on Remand") at 8.

More than seven months after Stephens filed his adversary proceeding, after the court's oral instructions concerning the discovery cutoff (which was never memorialized in an order because Stephens did not submit one), and despite repeated admonitions from the bankruptcy court, neither Smith nor Stephens had done anything to advance the case other than filing

12

a single, unilateral status report. Smith, and as a result Stephens, failed to produce written discovery, a settlement proposal, a mediation stipulation and proposed order, or propose a scheduling order. By contrast, Debtor was allegedly ready for trial in November 2011.

We acknowledge Stephens's argument that he should not be held responsible for Smith's inaction. But, in the final event, the bankruptcy court concluded that "Stephens should be held responsible for what resulted in an inexcusably abusive prosecution of his lawsuit insofar as the rights of [Debtor] were concerned." Id. at 9. As discussed in more depth in our previous memorandum, which we adopt here, we agree. Stephens v. Gomez (In re Gomez), BAP No. CC-13-1282-TaKuPa, 2014 WL 1229612, *4-*5 (9th Cir. BAP Mar. 25, 2014), vacated and remanded, 670 F. App'x 549 (9th Cir. 2016).

True, Smith was not forthcoming with Stephens; but Stephens was not unaware of the situation: he expressed frustration at the September 1 hearing. And the bankruptcy court personally admonished Stephens that it was Stephens's responsibility to move the case forward. These facts, and others, distinguish Lal v. California, 610 F.3d 518 (9th Cir. 2010) and Community Dental Services v. Tani, 282 F.3d 1164 (9th Cir. 2002), which essentially hold that an attorney's gross negligence may insulate a client from responsibility for the attorney's actions. But that excuse only applies when the client is unaware of an attorney's inaction. As the record makes clear, Stephens knew that Smith was not properly prosecuting the case.

We both agree with and defer to the bankruptcy court's

13

finding on this factor; it weighs in favor of dismissal.

**The court's need to manage its docket**. "This factor is usually reviewed in conjunction with the public's interest in expeditious resolution of litigation to determine if there is unreasonable delay." In re Eisen, 31 F.3d at 1452. Appellate courts "generally should defer to the bankruptcy court's assessment of what action is needed to facilitate the court's management of its own docket." In re Tukhi, 568 B.R. at 115 (citing In re Eisen, 31 F.3d at 1452).

Here, the bankruptcy judge, at the September 29, 2011 hearing, noted that the court's docket was full. Hr'g Tr. (Sept. 29, 2011) 10:6-8 ("We have a very full docket, and we don't have time to just meet and exchange these kinds of views every once in a while."). And at the February 2, 2012 hearing, the bankruptcy judge orally found: "So in my standpoint, this case is wasting a lot of the [Debtor's] time. This case is wasting a lot of the Court's time, and this is probably one of the busiest courts in the country. We don't have a whole lot of time to waste needlessly." Hr'g Tr. (Feb. 2, 2012) 4:2-6. On appeal, Stephens does not challenge this finding; and we defer to the bankruptcy judge's assessment of his own docket. Further, the hearing occurred at the height of the recession and the bankruptcy court for the Central District of California could correctly be characterized, at that time, as one of the busiest courts in the United States. We thus conclude that this factor weighs in favor of dismissal.

**The risk of prejudice to the defendant**. Even without a showing of actual prejudice, "[t]he law presumes injury from

14

unreasonable delay." In re Eisen, 31 F.3d at 1452 (quoting Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976)). But that presumption is rebuttable:

> In summary, where a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice. If he does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse. At that point, the court must exercise its discretion by weighing the relevant factors—time, excuse, and prejudice.

In re Roessler-Lobert, 567 B.R. at 569 (quoting Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1281 (9th Cir. 1980)).

Prejudice "usually takes two forms—loss of evidence and loss of memory by a witness." Nealey, 662 F.2d at 1281. That said, "a significant delay in resolution of litigation caused by a litigant's unreasonable conduct can cause prejudice to the adverse party under certain circumstances." In re Tukhi, 568 B.R. at 115. "This is particularly true in bankruptcy cases, when the litigation involves an exception to discharge claim, which clouds the debtor's fresh start by its mere existence." Id.[7]

---

[7] Tenorio v. Osinga (In re Osinga), 91 B.R. 893, 895 (9th Cir. BAP 1988) ("We note that debtors have recourse to bankruptcy so that they may have the benefit of immediate relief from oppressive economic circumstances and a fresh start. Parties seeking to except their debts from the operation of a discharge should litigate their claims with reasonable promptitude."); In re Bomarito, 448 B.R. 242, 251 (Bankr. E.D. Cal. 2011) ("A Chapter 7 bankruptcy discharge entitles a debtor (continued...)

15

We start by concluding that Stephens rebutted the presumption of prejudice; his excuse (i.e., it was his counsel's fault) is not frivolous. So we consider whether Debtor suffered prejudice and weigh the relevant factors.

As we explain elsewhere, we are not persuaded by Stephens's excuse; thus, the force of Stephens's excuse is low, at best. The record on prejudice, however, is thin; nothing suggests that a witness's memory would fade or that evidence would have been lost.[8] But we conclude that this is a case where the delay, itself, was prejudicial.

True, in previous cases, "we have stated that the fact that 'a defendant is impacted by the mere existence of pending litigation against them is not prejudice as contemplated by this factor.'" In re Roessler-Lobert, 567 B.R. at 570 (quoting In re Singh, 2016 WL 770195, at *9). The present situation is readily distinguishable.

In In re Singh, we concluded that pending nondischargeability and denial of discharge litigation was not prejudicial because the debtor "was subject to a separate

_____

[7](...continued)
to a 'fresh start,' therefore, the debtor has an interest in the prompt resolution of all discharge issues." (internal quotation marks and citations omitted)); Taylor v. Singh (In re Singh), BAP No. CC-15-1126-TaFC, 2016 WL 770195, at *8 (9th Cir. BAP Feb. 26, 2016) ("It is true that the public has an interest in avoiding unreasonable delay and in the expeditious resolution of complaints as to the dischargeability of debts and the denial of discharge.").

[8] We review this factor as of the time the bankruptcy judge made his decision. But we observe that the complaint was filed in late 2011; it is now late 2017.

16

discharge denial proceeding . . . as well as other related adversary proceedings." 2016 WL 770195, at *9. What's more, the debtor had requested a stay of the adversary proceeding, leading to the result that the plaintiff's failure to file a status report would not prejudice the debtor. Id.

In In re Roessler-Lobert, we concluded that requiring the debtor to show up at two brief hearings was not prejudicial. 567 B.R. at 570. And we observed that the debtor "did not make any serious effort to comply with the scheduling conference order or applicable rules; although she is unrepresented, she is not completely blameless." Id. Finally, in In re Tukhi, we concluded: "When, as here, the debtor Tukhi was advocating for even greater delay in the resolution of the nondischargeability action, it is illogical to conclude that Tukhi was at risk of being prejudiced by a brief delay resulting from the [plaintiff's] isolated incident of noncompliance with pretrial procedures." 568 B.R. at 116.

None of the mitigating factors in the cited cases are present here; thus, no such factor eliminates or reduces the impact of the elongated pendency of this litigation on Debtor. Debtor was prepared to promptly proceed to trial and resolve the dischargeability dispute. Debtor was not advocating for an even longer delay. And there were no other presently pending dischargeability or denial of discharge proceedings.

What's more, the bankruptcy court also found that Stephens transformed his dispute with Debtor into a dispute with Debtor **and** Smith; this necessarily shifted some cost and expense to Debtor. Bkcy. Ct. Mem. Dec. on Remand at 8 ("Instead of taking

17

corrective action as suggested by the court, Stephens allowed his dispute with Gomez to morph into one between Stephens and Smith. But the [Debtor] Gomez was the party at expense and risk as a result of the ongoing and utterly unproductive seven-month long prosecution of Stephens' lawsuit."). Consistently, Debtor mainly points to increased attorneys' fees as prejudice; this is sufficient.

Accordingly, we conclude that this factor favors dismissal or, at worst, is neutral.

**The public policy favoring disposition of cases on their merits.** Normally, this factor "weighs strongly against dismissal." In re Roessler-Lobert, 567 B.R. at 570 (quotation marks omitted). But we need not "scrutinize the merits" when reviewing a dismissal. In re Eisen, 31 F.3d at 1454. For instance, "[e]ven if the plaintiff has an obviously strong case, dismissal would be appropriate if the plaintiff has clearly ignored his responsibilities to the court in prosecuting the action and the defendant has suffered prejudice as a result thereof." Id. (quoting Anderson, 542 F.2d at 526). Even despite the public policy favoring disposition on the merits, "[i]t is the responsibility of the moving party to move towards that disposition at a reasonable pace, and to refrain from dilatory and evasive tactics." Id. (quoting Morris v. Morgan Stanley & Co., 942 F.2d 648, 652 (9th Cir. 1991)).

Here, neither the bankruptcy court nor the parties discussed the merits of the case. And the bankruptcy court repeatedly admonished Stephens that it was his responsibility to move the case towards disposition at a reasonable pace. Not

18

only did Stephens fail to move the case forward at a reasonable pace, he also does not accept that responsibility; he blames his attorney. True, Stephens suggests that he sought to retain other counsel. But he ultimately failed to do so, and when given the option, Stephens elected not to proceed pro se. Given the circumstances (Smith was not going to continue representing him; he would not represent himself; and he did not have another counsel available), we agree with the bankruptcy court's view that Stephens's prosecution of the case was dilatory. This factor weighs toward dismissing the case or is neutral.

**The availability of less drastic sanctions**. The bankruptcy court "need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." Henderson, 779 F.2d at 1424. That said, "[a]n explicit discussion of alternatives is not mandatory, especially if the court actually tried alternatives or warned the plaintiff before ultimately dismissing the case." In re Roessler-Lobert, 567 B.R. at 570 (citing In re Eisen, 31 F.3d at 1454–55).

This factor weighs strongly in favor of dismissal. Although the bankruptcy judge did not discuss the availability of less drastic sanctions, he did not need to. At the September 1 hearing, the bankruptcy judge warned Stephens that it was his responsibility to prosecute the case and that if he did not, the case might be dismissed. At the September 29 hearing, the bankruptcy judge again admonished Stephens and his counsel about the need to diligently prosecute the lawsuit and warned them that the case may be dismissed. The bankruptcy

19

judge dismissed the case only at a third hearing and after Stephens ignored prior warnings and only when it was clear that no cure for the unreasonable delay was at hand. Accordingly, this factor favors dismissal.

**Weighing the factors**. In sum, all of the factors either favor dismissal or are neutral, at worst. In these circumstances, we conclude that it was not an abuse of discretion for the bankruptcy court to dismiss the adversary complaint for lack of prosecution.

**B. We adopt our previous decision affirming the bankruptcy court's order denying reconsideration with one modification.**

As already noted, on appeal Debtor ignores the current appellate context; he continues to argue as if this is a Civil Rule 60(b) appeal. It is not. As before, we do not condone his attorney's actions or inactions, as the case may be. But the bankruptcy court determined, and we agreed and agree, that Stephens was partly responsible for Smith's inaction. Given his continuous knowledge of Smith's consistent dereliction of duty, there is no justification for deviating from the general rule that the client is bound by the action or inaction of his attorney. As we previously concluded, the bankruptcy court did not err in holding Stephens responsible for Smith's action and inaction and, thus, it did not abuse its discretion in denying relief under Civil Rule 60(b)(6). We also determined that the bankruptcy court did not err in denying reconsideration under Civil Rule 60(b)(2).

None of Stephens's present arguments persuade us that our previous Civil Rule 60(b) analysis was wrong. True, the Ninth

20

Circuit vacated that decision, but that was so we might consider the underlying dismissal decision; it did not express any opinion about the merits of our Civil Rule 60(b) decision. We thus adopt it.

We have one small amendment. We observed that Stephens's reconsideration motion failed to identify the underlying legal rule under which it sought relief and that the bankruptcy court applied Civil Rule 60(b). We concluded that this was not erroneous because we assumed that the time for appeal had passed.

The Ninth Circuit, however, determined that the time for appeal had not expired. Thus Civil Rule 59, applied in bankruptcy adversary proceedings by Bankruptcy Rule 9023, analysis appears warranted.[9] Having considered it, we determine that Civil Rule 59 relief was not appropriate here. First, as before:

> Careful review of Stephens' appellate brief as well as the record below, however, reveals that his arguments rest only on Civil Rule 60(b)(6) and, if liberally construed, the purported existence of "new evidence" under Civil Rule 60(b)(2). Thus, we do not consider Civil Rule 60(b)(1) and (b)(3) in this appeal; Stephens did not raise theories for reconsideration thereunder either below or on appeal.

---

[9] Civil Rule 59(e) allows for reconsideration only if the bankruptcy court: "(1) is presented with newly discovered evidence that was not available at the time of the original hearing, (2) committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." Fadel v. DCB United LLC (In re Fadel), 492 B.R. 1, 18 (9th Cir. BAP 2013). "There may also be other, highly unusual, circumstances warranting reconsideration." Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

21

Id. at *3.  We agree.  And, he also failed to assert any basis for relief under Civil Rule 59.  This works a waiver.  Even if we review his arguments generously, we can neither discern an argument supporting Civil Rule 59 relief nor manufacture a basis for Civil Rule 59 relief on these facts.  We thus also affirm the bankruptcy court's decision on the motion for reconsideration.

### CONCLUSION

Based on the foregoing, we AFFIRM.